NUMBER 13-01-861-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI





RITA CRUZ HINOJOSA , Appellant,

v.



THE STATE OF TEXAS , Appellee.




On appeal from the 197th District Court

of Cameron County, Texas.





O P I N I O N

Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Justice Castillo

 

 Appellant, Rita Cruz Hinojosa, was convicted by a jury of the offense of injury to an elderly individual (1) and sentenced by
the court to five years imprisonment, suspended for five years. From this conviction, she appeals, raising three issues
complaining of the trial court's action in limiting cross-examination of the complaining witness, appellant's mother-in-law. 
Specifically, appellant asserts that the trial court erred in: 1) "excluding evidence to establish ill-feelings, bias, motive, and
animus on the part of the complaining witness which would explain why this witness was lying about whether [appellant]
hit her;" 2) violating appellant's sixth amendment right to confrontation by "refusing to allow defense counsel to make
proper inquiry about bias and motive on the part of the complaining witness as to why the complaining witness may be
lying about appellant's alleged act against her;" and 3) violating rule of evidence 613 (2) "in denying defense counsel's
attempt to impeach the complaining witness through inquiry into her prejudices against aliens and knowledge of the
immigration consequences of a conviction." We affirm. 

FACTUAL BACKGROUND

 Appellant married the complaining witness's son, Wally. (3) Wally did not tell his mother of the marriage for some time
and after he did, relations between appellant and her mother-in-law were fractious. The mother-in-law believed that
appellant, a Mexican national without legal immigration status, had only married Wally in order to "fix her papers" and
change her immigration status and that of her children. (4) The mother-in-law also was afraid of appellant, who had
assaulted her and her son during the marriage and who had threatened her on other occasions. Appellant believed that her
mother-in-law disapproved of the marriage, interfered with her relationship with Wally, and would say negative things
about her to Wally, accusing her of not loving Wally and marrying him solely for immigration and pecuniary benefits. 

 After a few years of marriage, Wally died. Relations between appellant and the complaining witness continued to
deteriorate after Wally's death. A few months after the funeral, appellant had her husband's body disinterred and moved to
another grave without any notice to her mother-in-law. Shortly thereafter, upon arrival for a visit to her son's grave, the
mother-in-law found a man filling in a hole where her son had been buried. The man informed her that the body had been
moved the day before and she went to the office to find out where the new grave was located. According to the
complaining witness, the office manager did not want to provide her the information because appellant did not want the
complaining witness to know where Wally was buried or to visit his grave. (5) Nevertheless, the manager did show the
complaining witness the new grave site. 

 About a month later, the complaining witness went to make a payment at the cemetery where her son was buried. Finding
the office closed, she began to leave when appellant arrived at the scene, screaming and yelling at her. The complaining
witness explained that appellant was angry that the complaining witness had been told where the new grave was located
and that she had told others that appellant had had Wally moved and had not informed her. Appellant grabbed the
complaining witness by the hair and shoulder, pulled her out of her car, and punched her in her face and mouth, while using
foul language, telling the complaining witness that "this [was] for [her] to learn" to "keep her mouth shut," and threatening
to disinter Wally's body again and have it cremated. (6) This assault formed the basis for the conviction.

THE CROSS-EXAMINATION

 All of appellant's complaints arise out of the alleged restriction of her right to effectively cross-examine the complaining
witness at trial for purposes of showing bias and prejudice toward persons of appellant's immigration standing, thus
hampering appellant's attempts to impeach the witness. Appellant concedes that defense counsel was able to show proof of
the witness's hostile attitude toward appellant. However, appellant argues, the trial court foreclosed her efforts to impeach
the witness by showing that it was the witness's intent to prevent appellant from acquiring United States citizenship and
that such intention was her motivation for falsely claiming that appellant hit her.

 The State argues that the trial court had the right to reasonably restrict cross-examination and did, in fact, afford appellant
"great latitude" to establish the ill-feelings and bad history between appellant and the complaining witness. The State
claims that the bias and prejudice that appellant was trying to establish was "patently obvious" to the jury and that further
questions regarding the witness's feelings toward persons of appellant's immigration status would have confused the jury as
to the issues before it. 

 There are three portions of the record to which appellant refers us in order to demonstrate error by the trial court. (7) All
occurred during the cross-examination of the complaining witness.

The first question

 The first complained-of limitation of cross-examination involved the trial court sustaining an objection as to relevancy
regarding the following question: "Mrs. [witness], you never accepted my client as your son's wife, did you?" After the
trial court sustained the objection, defense counsel argued that it was necessary to go into the relationship between the two
women (appellant and witness). The trial judge stated, "I think you have done that. I think it is very clear. It is clear to me. 
I am sure it must be clear to the jury. But if you have more questions, go ahead, but let's get going."

The second question

 The very next question asked of the witness is the second portion of the record to which we are referred by appellant. 
Immediately after the preceding comments by the judge, defense counsel asked, "Isn't it true, Mrs. [witness], that one of the
reasons you did not like my client was because she was what you called a mojada?" (8) The witness responded "No" before
the trial court sustained the State's objection that the question was argumentative. Appellant did not object to the trial
court's action and turned to questioning the witness on another, unrelated, topic.

The third question

 The last portion of the record to which appellant refers us occurs later in the cross-examination. After asking the
complaining witness whether she interfered in the lives of appellant and her husband [complainant's son] and whether the
complaining witness ever told her son "things about [appellant]," both of which the witness answered in the negative,
defense counsel asked, "You never told Wally that [appellant] was a mojada and all she wanted was to marry him to fix her
papers?" The State objected, (9) the witness answered, "No, ma'am," and then the trial court sustained the State's objection,
stating, "We've been over this once before." Defense counsel agreed and the trial judge stated that he would not "sit here
all day long and have the same questions asked of the same witness again. So if you can't think of some new questions,
let's just go ahead and terminate your cross-examination if you are through." 

 Defense counsel argued that she had more questions about the interference of the witness in the relationship between
Wally and appellant. The judge stated he did not think the matter was relevant and counsel urged that the history between
the witness and appellant was relevant to bias and credibility. The judge agreed but observed that such matters had already
been gone into and there was no reason to be repetitious. Counsel stated she was not being repetitious and the judge said,
"All right." The prosecutor then argued that the question of the witness's interference had nothing to do with what the State
had to prove. Defense counsel agreed and the judge then stated that if it had nothing to do with what the State had to prove,
he would sustain the objection again. Defense counsel argued that she needed to establish the bad history between the two
women and the judge stated that it was well-established and he "had no problem with that." Counsel urged that all the
questions went to the credibility of the witness and the judge responded, "Well, go ahead with your questioning." 

 Defense counsel then questioned the witness again about whether she interfered in her son's marriage, during which the
following exchange occurred:

 Q. Isn't it a fact, Mrs. [witness], that you would tell Wally things about your [sic] wife - - 



 A. No, ma'am.



 Q. - - that had to do with the only reason that she married him was because she was an illegal alien?



 A. No, ma'am.



 [Prosecutor]: Your Honor - - 



 [Defense Counsel]: Your Honor, I pass the witness.



 [Prosecutor]: - - this is completely irrelevant.



 [Judge]: I think so.



 [Defense Counsel]: I have finished with my cross.



 [Judge]: Thank you very much.



LIMITATION OF CROSS-EXAMINATION AND

DENIAL OF SIXTH AMENDMENT RIGHT OF CONFRONTATION



 In appellant's first issue, she complains that the trial court improperly limited her cross-examination of the complaining
witness by not permitting her to question the witness in depth about "prejudices concerning illegal aliens . . . her knowledge
about the consequences of a conviction and how a conviction [might] affect the immigration status of an alien," thus
preventing her from delving into the witness's motivations for testifying as she did. In her second issue, appellant
complains that her sixth amendment right to confrontation under the U.S. Constitution was abridged because she was not
allowed to pursue such questioning. We will consider both issues jointly.

The Right to Cross-Examine

 Generally, "a defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive,
bias, or interest for the witness to testify." Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). The
confrontation clause of the Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the opportunity for
effective cross-examination. Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). The right to cross-examination is not
unlimited and a trial court has wide discretion to limit the scope of cross-examination to "prevent harassment, prejudice,
confusion of the issues, harm to the witness, and repetitive or marginally relevant interrogation." Id. at 679. However, a
trial court violates a defendant's right to confrontation when the court prohibits the defendant from "engaging in otherwise
appropriate cross-examination designed to show a prototypical form of bias on the part of the witness" thereby exposing
facts "'from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Id. at 680
(quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). Error is shown when a reasonable jury might have received a
significantly different impression of the witness's credibility if the defendant's counsel had been permitted to pursue the
prohibited, but otherwise appropriate, line of questioning. Id. 

 There is a distinction, for appellate review purposes, between a situation in which a defense counsel attempts to elicit
certain specific responses from a witness, but is precluded from doing so by the trial judge, and a situation in which a
defense counsel is not permitted to question a witness about a certain general subject that might affect the witness's
credibility. Virts v. State, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)(en banc). The respective requirements for preserving
error in each situation are distinct. Id. In the former situation, in order to preserve error, defense counsel must make a bill
of exception wherein the witness answers the specific questions on the record, or alternatively, counsel may make an offer
of proof that includes the questions that would have been asked and the answers that were expected to be received. Tex. R.
App. P. 33.2; Tex. R. Evid. 103 (a)(2); Virts, 739 S.W.2d at 29; Koelher v. State, 679 S.W.2d 6, 9 (Tex. Crim. App.
1984)(en banc). However, when the complaint is that the trial judge denied a defendant the opportunity to question a
witness generally about a matter that might affect the witness's credibility, it is not necessary to show what the
cross-examination would have established in order to preserve the complaint; it is enough to establish the general subject
matter on which the witness would have been questioned and, if challenged, demonstrate why it should have been admitted
into evidence. Virts, 739 S.W.2d at 29; Koelher, 679 S.W.2d at 9.

 The "parameters of cross-examination for the showing of bias [rest] on the sound discretion of the trial judge" who "must
balance probative value against prejudicial risks, i.e. undue prejudice, embarrassment, harassment, confusion of the issues,
and undue delay." Chambers v. State, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993)(en banc). Accordingly, the trial court's
determination is not reversible absent a clear abuse of discretion. Id. If we do determine that a trial court improperly
limited the scope of a defendant's cross-examination of a witness, and that the error was preserved, we must then conduct a
harm analysis under the three-prong analysis set out in Van Arsdall. Van Arsdall, 475 U.S. at 684. Under this analysis, we:

 [first] assume that the damaging potential of the cross-examination [was] fully realized. Second, with that assumption in
mind, [we] review the error in connection with the following factors:

 

 (1) The importance of the witness'[s] testimony in the prosecution's case; 

 

 (2) Whether the testimony was cumulative;

 

 (3) The presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; 



 (4) The extent of cross-examination otherwise permitted; and,



 (5) The overall strength of the prosecution's case.



 Finally, in light of the first two prongs, [we] determine if the error was harmless.



Shelby v. State, 819 S.W.2d 544, 547 (Tex. Crim. App. 1991)(en banc)(citations omitted). 

ANALYSIS

The first question

 As to the first portion of the record detailed above, we find that the only limitation made by the trial court in this exchange
was to sustain the objection to the specific question asked. The trial court did not in any way prevent appellant from
questioning the witness generally about a subject matter that might affect her credibility and even told counsel to go ahead
with any further questions. We find no limitation of appellant's right to cross-examine in this exchange and so no error.
Furthermore, any claim that the trial court improperly denied appellant the opportunity to elicit the specific response to the
specific question asked was not preserved for appeal since no bill of exception or offer of proof was made. Tex. R. App. P.
33.2; Tex. R. Evid. 103 (a)(2); Virts, 739 S.W.2d at 29; Koelher 679 S.W.2d at 9.

The second question

 In this portion of the record also, the trial court in no way restricted appellant from pursuing a particular line of
questioning, but rather only prevented appellant from eliciting a specific response to a specific question. We do not find
that the trial court denied appellant the opportunity to propound a line of questioning that would have established bias, and
so we find no error. Like the first question, any complaint of the denial of the opportunity to elicit the specific response to
the specific question was not preserved. (10) Tex. R. App. P. 33.2; Tex. R. Evid. 103 (a)(2); Virts, 739 S.W.2d at 29;
Koelher, 679 S.W.2d at 9.

The third question

 As in the other two portions of the record to which we have been referred, the trial court did not restrict defense counsel
from pursuing a general line of questioning. We find no limitation of appellant's right to generally cross-examine the
witness on a particular issue to show bias in this portion of the record and so no error in that regard. The trial court did
sustain an objection to a particular question and so appellant was not permitted to elicit the particular response to the
question, but in the absence of a bill of exception or offer of proof, that issue is not preserved for appellate review. (11)Tex.
R. App. P. 33.2; Tex. R. Evid. 103 (a)(2); Virts, 739 S.W.2d at 29; Koelher, 679 S.W.2d at 9.

 We do note that the trial judge clearly felt trial counsel had firmly established the bad relationship between the
complaining witness and appellant and did initially suggest that the cross-examination be ended if appellant only planned
on continuing to ask questions that the judge considered repetitious. If the trial court had enforced this recommendation by
denying further questioning, then there would be a question confronting us regarding the denial of appellant's right to
cross-examine the witness. However, the judge capitulated to counsel's arguments and suggested that counsel go ahead with
the questioning. Counsel went on to ask, and receive an answer to, essentially the same question that the trial court had
sustained an objection to earlier. Thus, any error in sustaining the original objection was rendered harmless. Williams v.
State, 937 S.W.2d 479, 489 (Tex. Crim. App. 1996)(holding that where a trial court errs in sustaining an objection to
certain evidence, any error is cured when the defense counsel later successfully elicits testimony concerning the same
subject). 

The "motivation" question

 Appellant makes a general assertion that the trial court foreclosed "all inquiry into the mother-in-law's prejudice against
aliens, and . . . any further inquiry about her knowledge of the consequences of a conviction on the immigration status of an
alien." We have failed to discover any attempt to question the complaining witness about a prejudice against "aliens"
generally or about her knowledge of the immigration consequences of a conviction. (12) Appellant refers us only to the
portions of the record outlined previously, which do not reveal any foreclosure of appellant's ability to question the witness
on these subjects or any subject to reveal bias and so do not support her complaint. 

 Appellant also argues that the trial court's actions denied her the opportunity to assert the theory that the complaining
witness was motivated to lie about being hit by appellant because it was the witness's intent to deny appellant the chance to
become a citizen. However, in addition to the fact that the trial court did not limit the scope of appellant's
cross-examination in the portions of the record cited to us, we also note that appellant never asked or even attempted to ask
the witness about such a motivation. The sections brought to our attention evince an attempt to establish that the witness:
(1) disliked appellant, at least in part because she thought appellant married Wally to better her immigration status; (2) did
not "accept" appellant as Wally's wife and interfered with the marriage between appellant and Wally; and (3) had a bad
relationship with appellant. There is no questioning, or attempted questioning of the complaining witness about an intent to
hurt appellant's future immigration status or even what she knew about possible consequences to appellant's immigration
status which would be brought about by a criminal conviction. Nor did appellant make a bill of exception, offer of proof,
or at any time advise the court during the course of the cross-examination that she was attempting to establish that the
witness's testimony was motivated by her intent to effect a denial of appellant's citizenship opportunities. Defense counsel
only advised the trial court that: (1) the case involved "a history of bad feelings and biases" and so she needed to establish
"the relationship between these two ladies;" and (2) that she was entitled to explore further whether the witness interfered
in the marriage once the witness had denied doing so. Both areas were amply explored at trial. The trial court did not
restrict appellant from pursuing this theory.

 Additionally, we agree with the State that appellant was, in fact, able to put forth her theory for the motivation
behind the complaining witness's testimony. Early in appellant's cross-examination of the complaining witness, the witness
admitted telling the police that the only reason appellant had married her son was to "fix her papers," that is, change the
immigration status and that of her children. The witness stated those statements were not merely her own subjective belief
but were based on statements that appellant had made to her. During appellant's direct examination, appellant stated that
she believed that her mother-in-law was bringing false accusations against her because that was the only way that appellant
could be denied residency in the United States. Appellant also testified she could work legally at the moment due to a
temporary permit but that her mother-in-law knew that she [the mother-in-law] could "take that away" if appellant was
convicted. (13) 

 We overrule appellant's first and second issues.

VIOLATION OF RULE 613(b)

 In her final issue, appellant complains that the trial court violated rule of evidence 613(b) because the trial court did not
permit further inquiry into the witness's attitude toward "illegal aliens and the immigration status of [a]ppellant" once the
witness had "denied these prejudices." Tex. R. Evid. 613(b). Rule 613(b) prohibits further cross-examination or proof of
external evidence in an attempt to impeach a witness by proof of circumstances or statements demonstrating a particular
bias or interest until after a witness has been informed of the circumstances supporting a claim of bias or interest and has
been given an opportunity to explain or deny those circumstances. Id.; Willingham v. State, 897 S.W.2d 351, 358 (Tex.
Crim. App. 1995); Williams v. State, 976 S.W.2d 330, 331-32 (Tex. App.-Corpus Christi 1998, no pet.). 

 In support of this issue, appellant refers us again to the portions of the record cited previously. However, the propounded
questions in those sections did not ask the witness about "her attitude towards illegal aliens." Two questions alluded to the
witness's feelings about the immigration status of appellant: (1) the query, "Isn't it true, Mrs. [witness], that one of the
reasons you did not like my client was because she was what you called a mojada?"; and (2) "You never told Wally that
[appellant] was a mojada and all she wanted was to marry him to fix her papers?" 

 Assuming, without deciding, that appellant laid the proper foundation for the introduction of proof of circumstances to
impeach the witness as required by rule 613(b), the trial court never limited appellant from doing so, nor did it limit further
cross-examination or the introduction of external evidence to prove bias. After the first inquiry, appellant made no effort to
ask any other questions along these lines, but turned to questioning the witness on another topic. After the second inquiry
was answered, (14) appellant told the court that she had concluded her cross-examination.

 Moreover, appellant did not preserve any rule 613(b) (15) complaint for appeal. Appellant never informed the trial court that
she was relying on the provisions of rule 613(b) nor did she argue that she had met its requirements and so wished to
introduce further evidence in impeachment. See Tex. R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 273 (Tex. Crim.
App. 1999)(op. on reh'g)(finding that an objection under rule 608(b) did not preserve a complaint under Rule 612(b));
Johnson v. State, 963 S.W.2d 140, 142 (Tex. App.-Texarkana 1998, pet. ref'd )(holding that party offering evidence has
burden to establish admissibility and where theory of admissibility is not presented to trial court, argument is not preserved
for appellate review). While we may uphold a trial court's ruling on any legal theory applicable to the case, we may not
normally reverse a trial court's ruling on a theory or basis which might have been applicable to the case, but was not raised
before the trial court. Martinez v. State, No. 344-02, 2002 Tex. Crim. App. LEXIS 233, at *13 (Tex. Crim. App.,
December 11, 2002). Additionally, appellant was required to include a bill of exception as to the specific evidence that she
complains was excluded in violation of rule 613(b) in order for any error to be reviewable on appeal. See Penwell v.
Barrett, 724 S.W.2d 902, 907 (Tex. App.-San Antonio 1987, no writ)(dealing with former Texas Rule of Civil Evidence
612, now rule 613). 

 Appellant took none of these actions. Thus, even if there had been any error, it would not have been preserved for our
review. We overrule appellant's third issue.

CONCLUSION

 Having overruled all of appellant's issues, we affirm the judgment of conviction.

 

ERRLINDA CASTILLO

Justice



Do not publish .

Tex. R. App. P. 47.2(b).



Opinion delivered and filed

this 30th day of January, 2003.

1. Tex. Pen. Code Ann. §22.04(a)(3), (c)(2)(Vernon Supp. 2003).

2. Tex. R. Evid. 613(b).

3. As appellant, the complaining witness, and the complaining witness's son all shared the same surname, we will refer to
the son by the name by which he was referred to at trial.

4. Appellant testified that she had lived in the United States for over eighteen years; that eight months before her husband
died, at his request, she had begun processing her "papers" and those of one of her children who was not a U.S. citizen; that
her other two children were already U.S. citizens; and that she had not begun the process earlier because of her
mother-in-law's accusations about the motives for her marriage. 

5. The office manager denied making these statements.

6. Appellant admitted meeting the complaining witness at the cemetery and having an argument with her, but denied
assaulting her and testified to a different basis for the argument.

7. Appellant also references another portion of the record in her complaints. However, that part of the record deals with an
exchange that took place during direct examination of appellant, rather than the cross-examination of the complaining
witness. Hence, we do not review that portion of the record for the errors complained of in this appeal, which all related to
the cross-examination of the complaining witness. 

8. "Mojada" is a pejorative term for a Mexican national who resides in the United States without legal immigrant status.

9. The State alleged no specific ground for its objection.

10. We note that the witness responded "No." It does not appear that the specific response to the question asked would
have been beneficial to appellant's case.

11. Like the apparent answer to the second question, the apparent answer, "No," suggests that any error in not permitting
the specific response would have been harmless. 

12. Nor is there a bill of exception or offer of proof that indicates that appellant wished to ask those particular questions. 

13. Defense counsel emphasized this suggested motivation to the jury as part of the closing statement, arguing that
appellant might become a citizen, "much to the dismay of [the complaining witness]" and then telling the jury that appellant
would not be able to become a citizen of the United States if they found her guilty. The State objected that the jury should
not be allowed to consider how the outcome of the case would affect appellant's immigration status and requested that the
jury be instructed not to consider immigration matters. The trial court granted the request and instructed the jury "not to
consider anything about the immigration. We are not here on an immigration question." Defense counsel did not object to
the trial court's instruction to the jury, nor does appellant complain of it on appeal. We do not consider then, whether there
was any error in the giving of such instruction. 

14. The State lodged an objection to this question, which was sustained, but appellant later asked it again in slightly
different language and was able to elicit a response from the witness.

15. Some older cases discussing this rule cite to Texas Rule of Criminal Evidence 612. With the subsequent consolidation
of the rules of evidence, the text of that rule moved, essentially unchanged, to the current Rule of Evidence 613. Lopez v.
State, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002).