Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
RUBEN PEREZ,                                                 )                  No. 08-03-00300-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  384th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20000D04683)

O P I N I O N

            Ruben Perez appeals his conviction of two counts of aggravated robbery. Appellant entered
a plea of guilty before a jury. The jury found him guilty and assessed punishment at a $10,000 fine
and imprisonment for a term of sixty years on each count. The trial court entered in the judgment
an affirmative deadly weapon finding. Finding no error, we affirm.
FACTUAL SUMMARY
            During the summer of 2000, Appellant and two accomplices, Yvette Talamantes (his
common-law wife) and Joseph Barela, committed several aggravated robberies and attempted
carjackings on Scenic Drive in El Paso. The instant case involves an aggravated robbery and car
jacking of four victims committed on July 9, 2000. 
            The crime spree began on June 30, 2000, when Appellant, who was on community
supervision for possession of five to fifty pounds of marihuana, robbed a pizza-delivery driver at
gunpoint. A few days later, on July 4, Appellant forced Manuel Ruiz, who owed Appellant $20 for
drugs, to commit a robbery in order to get money to pay Appellant. Appellant provided Ruiz with
the gun to commit the robbery. Ruiz robbed an off-duty police officer at an El Paso bar. Shortly
before the commission of the instant offense, Appellant, Barela, and Talamantes went to Scenic
Drive for the purpose of committing a carjacking. Barela shot Sergio Espinoza in the face and shot
Josie Gonzalez Espinoza five times. Appellant and Barela were unable to steal the car and fled in
their car with Talamantes. Both victims survived.


 On a subsequent occasion, Appellant and Barela
approached a car parked on Scenic Drive, but the driver was able to speed away. Barela fired a shot
at the vehicle. On July 9, 2000, Appellant and Barela returned to Scenic Drive. Appellant, armed
with a handgun, threatened four people with the gun and stole their car. Talamantes acted as the
getaway driver. One week after the Scenic Drive offenses, Appellant approached a man in the
parking lot of a bar and attempted to rob him at gunpoint. The man escaped into the bar and called
the police. Police captured Appellant after a chase and some resistance. Appellant gave two written
statements admitting his involvement in these offenses. A grand jury returned a four-count
indictment for the aggravated robbery of the four victims committed on July 9, 2000. At his jury
trial, Appellant entered a plea of guilty to two of the four counts and the State dismissed the other
two counts. The jury assessed Appellant’s punishment at a $10,000 fine and imprisonment for a
term of sixty years on each count.
VOLUNTARINESS OF STATEMENTS
            In Point of Error One, Appellant contends that his written statements were involuntary and
that he did not knowingly waive his right to counsel because he was intoxicated, he had been injured
during his arrest, and the police exerted undue influence on him through sleep deprivation, injury
and promises of family visits. Appellant filed a motion to suppress, claiming that his written
statements were involuntary, coerced, or enticed and he did not intelligently or knowingly waive his
right to counsel. 
            At a pretrial suppression hearing, Officer Randal Stevenson testified regarding his
participation in the chase and apprehension of Appellant. At about 1:10 a.m., Stevenson heard a
dispatch regarding an armed suspect fleeing from a westside bar. Stevenson drove into an apartment
complex and saw an individual, later identified as Appellant, being chased by another police officer. 
Seconds later, Stevenson heard a shot fired and radioed that information before exiting his vehicle
to help apprehend Appellant. Initially, Stevenson and other officers could not find Appellant despite
an extensive search in the apartment complex, but Stevenson found him hiding in some bushes. 
Stevenson ordered him to get up and show his hands, but Appellant kept his left hand hidden from
view and complained that his leg was hurting. Appellant leaned down out of sight, making
Stevenson fear he was retrieving his weapon, and when he stood back up, held up his left hand while
keeping his right hand hidden. While Stevenson kept his weapon trained on Appellant, the other two
officers tackled Appellant and took him to the ground face first. Appellant began striking both
officers with his hands and kicking them. After a struggle, they subdued Appellant and handcuffed
him. Stevenson advised Appellant of his Miranda rights. Stevenson noticed that Appellant smelled
heavily of alcohol. Pictures taken of Appellant at the scene reflect scrapes, bruises, and cuts on his
face as well as a “goose egg” on his forehead. Appellant refused treatment for his injuries. He did
not have a handgun on his person. The officers placed Appellant in a patrol car at approximately
1:30 and continued to look for the weapon. After a two and a half hour search, they found the
handgun hidden in some bushes and transported Appellant to Crimes Against Persons around 4 a.m. 
            Once at CAP, Stevenson allowed Appellant to use the restroom and to wash his face before
taking him to an interview room. Stevenson talked with Appellant for a while about his family and
prior record but he did not record the conversation. Appellant rested in a chair with his eyes closed,
but Stevenson was not sure whether he was asleep. Stevenson described Appellant as calm, in start
contrast to his demeanor earlier that evening.


 
            Detective Gonzalo Chavaria was assigned to investigate the crimes which had taken place
on Scenic Drive in July of 2000. On July 16, 2000, Chavaria interviewed Appellant at 11:30 a.m.
in the CAP office. Chavaria read the Miranda warnings to Appellant. Appellant said he understood
his rights, but waived them and agreed to speak with Chavaria. He spoke with Appellant only a few
minutes before being interrupted by his supervisor who asked him to include Appellant’s photo in
a photo lineup and show it to one of the victims from the Scenic Drive carjackings. Chavaria went
to an El Paso hospital and showed the lineup to Josie Gonzalez Espinoza, who immediately
identified Appellant as having been involved in the attempted carjacking. Chavaria returned to CAP
and resumed his interview of Appellant at about 12:30 p.m. that same day and spoke with Appellant
for a couple of hours. During this time, Appellant ate lunch and was permitted to use the restroom. 
He also had several cigarette breaks and Chavaria allowed Appellant to visit with Talamantes. 
Appellant agreed to give Chavaria a written statement at about 3:30 p.m. Chavaria typed the
statement on a computer while talking with Appellant. He printed the statement and Appellant read
it out loud in Chavaria’s presence before signing it at 5:21 p.m. The first paragraph of the statement
includes the statutory warnings required by Article 38.22 of the Code of Criminal Procedure.


 
Appellant expressly waived his rights and signed the written statement. Chavaria did not threaten
Appellant or make him any promises. Appellant did not want a lawyer and he never asked to
terminate the interview. Appellant had scrapes on his face but he did not appear to need any type
of medical assistance and did not ask for any treatment for his injuries. He was not intoxicated at
the time Chavaria spoke with him or when he made and signed the written statement. In the
statement, Appellant admitted his involvement in the attempted carjacking and shooting of Sergio
and Josie Espinoza, but stated that his cousin “Ritchie,” not Talamantes, was the getaway driver. 
            After the police discovered that Appellant had lied about his cousin’s involvement in the
Scenic Drive offenses, Chavaria spoke with Appellant again at 11 p.m. Appellant waived his rights
and gave a second written statement, signed around midnight, admitting he had lied about his cousin
being involved in the Scenic Drive offenses. He claimed a female had been present with them but
denied knowing her name. The statement provides:
I am not handcuffed, I am sitting on the chair while giving this statement. I have
eaten a burger and fries earlier. I have gone to the restroom several times and have
also drank water and a soda. I have been sitting and resting most of the time while
waiting for the investigation. 

            At the unitary proceeding, Appellant’s counsel renewed his prior objections to both
statements. The court noted those objections for the record and admitted both statements. Appellant
did not testify at trial in support of his claim that his statements were involuntary.
                                                              Standard of Review
            When we review a trial court’s ruling on a motion to suppress a confession, we apply the
standard of review enunciated in Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Under
the Guzman standard, we give almost total deference to a trial court’s determination of historical
facts supported by the record, especially when the trial court’s fact-findings are based on an
evaluation of credibility and demeanor. Guzman, 955 S.W.2d at 89. We afford the same amount
of deference to the trial court’s rulings on application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of
credibility and demeanor. Id. However, we review de novo mixed questions of law and fact not
falling within this category. Id. In the case at bar, the trial court did not make explicit findings of
historical fact; therefore, we assume the judge made whatever appropriate implicit findings are
supported by the record. Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000);
Guzman, 955 S.W.2d at 89-90. The trial court’s determination that Appellant’s statements are
voluntary necessarily turns on an evaluation of Officer Stevenson’s and Detective Chavaria’s
credibility and demeanor. Therefore, we will give substantial deference to the court’s implied
findings.
Intoxication, Injury and Coercion
            An accused’s statement may be used against him if it is made freely and voluntarily.
Tex.Code Crim.Proc.Ann. art. 38.21 (Vernon 2005). We determine the voluntariness of the
statement by examining the totality of the circumstances surrounding the taking of the statement.
Griffin v. State, 765 S.W.2d 422, 429 (Tex.Crim.App. 1989). Intoxication alone is insufficient to
render a confession involuntary. See Nichols v. State, 754 S.W.2d 185, 190 (Tex.Crim.App. 1988).
The central question is the extent to which Appellant was deprived of his faculties due to the
intoxication. Nichols, 754 S.W.2d at 190. While Appellant smelled of alcohol at the time of his
arrest, there is no evidence Appellant was intoxicated when he gave his first written statement twelve
hours later. To the contrary, Chavaria affirmatively testified Appellant was not intoxicated.             Appellant also complains that as a result of the physical injuries suffered during his arrest,
he was unable to understand, invoke, or waive his rights. The trial court heard evidence regarding
the manner in which Appellant was subdued by police and viewed photographs of the injuries to
Appellant’s face. Appellant declined medical treatment. There is no evidence from which it can be
concluded that Appellant’s injuries were so severe that he could not understand, invoke, or waive
his rights. Consequently, the injuries do not raise an issue related to voluntariness of the written
statements. See Butler v. State, 872 S.W.2d 227, 235-36 (Tex.Crim.App. 1994)(where there was no
evidence that injuries sustained prior to interview affected the defendant’s ability to knowingly waive
his rights, an issue as to voluntariness was not raised).
            The record also fails to support Appellant’s claim that he was coerced through means of sleep
deprivation and promises of family visits. According to Stevenson, Appellant appeared to be
sleeping in the interview room, or at least had his eyes closed, before Chavaria arrived. In his second
statement, Appellant said he had been sitting and resting, and had been given food to eat, and a soda
and water to drink. Chavaria permitted Talamantes to visit with Appellant. Chavaria testified that
Appellant did not ask to see and was not denied access to anyone else. 
            There is no evidence supporting Appellant’s contention that his statements were involuntary. 
To the contrary, the record supports the trial court’s implicit finding that the statements were
voluntary under the totality of the circumstances. For these reasons, the trial court did not abuse its
discretion in admitting the written statements into evidence. Point of Error One is overruled.
CHANGE OF VENUE
            In Point of Error Two, Appellant argues that the trial court erred by denying his motion for 
change of venue because (1) the State’s affidavits are deficient, and therefore, he is entitled to a
change of venue as a matter of law; and (2) the prejudice against Appellant generated by media
coverage of the Scenic Drive offenses and his co-defendant’s trial made it impossible for him to
obtain a fair trial in El Paso County. 
            Approximately one month before trial was scheduled to begin, Appellant filed a motion 
requesting that venue be moved to Bexar County. He supported the motion with affidavits by his
attorney, Patrick Lara, Dolph Quijano, Jr. (counsel for Yvette Talamantes), and attorney Joseph D.
Vasquez. Each affidavit stated it was impossible for Appellant to obtain a fair and impartial trial in
El Paso County due to prejudice against him. The State responded to the motion with five
controverting affidavits, each of which contained the following paragraph:
I have read the Defendant’s affidavit in support of Defendant’s Motion for Change
of Venue in this cause. The affiant of said Affidavit is not credible as he is
prejudiced to his own position and his means of knowledge are not sufficient to
support and justify the statements contained therein. Furthermore, the Defendant can
receive a fair and impartial trial in El Paso County, Texas. 

            At the hearing on the motion, Barela’s attorney, Jim Darnell, testified that his trial strategy
included blaming Appellant for the Scenic Drive shootings. Darnell utilized the strategy during
interviews with the television media. In his opinion, prejudice against Appellant resulting from the
media coverage would prevent him from obtaining a fair trial in El Paso County. Darnell admitted
on cross-examination that the Scenic Drive offenses received significant coverage when they
occurred but the coverage had diminished when Barela’s trial took place in 2002. The newspaper
did not provide significant coverage of Barela’s trial and Darnell did not know how many stories
aired on local television stations. However, he did recall that some stories mentioned Appellant. 
Several people, including Darnell’s barber, told Darnell they saw his interviews on television but he
did not know how many people were influenced by the media coverage. 
            Luis Islas, a second attorney who represented Barela, testified that he did not believe
Appellant could get a fair trial in El Paso County due to the negative publicity he received during
Barela’s trial. However, Islas was unaware of the content of any news stories pertaining to Barela’s
trial and did not know whether anyone had been influenced by the media coverage. 
            Dolph Quijano, Jr. also testified at the hearing. Based on his experience as a criminal defense
attorney, media reports he had seen, and conversations with members of the community, Quijano
did not believe Appellant could receive a fair trial in El Paso County. As one example of these
conversations, Quijano’s wife had spoken with other women at a nail salon who expressed prejudice
against the defendants accused of the Scenic Drive crimes. Quijano admitted that he did not know
how much media coverage had been given to Barela’s trial, how many people had seen or heard it,
or whether anyone had been influenced by it.
            Joseph Vasquez also testified at the hearing that, in his opinion, Appellant could not obtain
a fair trial based on the media coverage of Barela’s trial. Like the other witnesses, Vasquez did not
know the extent to which the media had covered the trial, how many people had seen it, or whether
anyone had been influenced by the media coverage. Due to the absence of a witness, the trial court
continued the hearing until a later date. 
            At a subsequent hearing, the State withdrew three of the five controverting affidavits it had
filed, leaving only the affidavits of two police officers, Frank Zubia and Fernie Yanez. Zubia
testified that he had read the affidavits of Quijano and Vasquez but he had not spoken with them
about the case. Consequently, Zubia could not state whether either Quijano or Vasquez were
credible, and he expressed a willingness to withdraw that part of his affidavit. The prosecutor
stipulated that Sergeant Yanez would testify similarly. 
            At the conclusion of the hearing, the prosecutor argued that Appellant had failed to show that
pretrial publicity was so pervasive or prejudicial that he could not get a fair trial and he had failed
to show any actual prejudice from the publicity. Further, the prosecutor asserted that the affidavits
of Zubia and Yanez were sufficient to place the venue issue before the court. In response, defense
counsel argued that because the officers withdrew the portions of their affidavits challenging the
credibility of Appellant’s affidavits, he was entitled to a change of venue as a matter of law. The
trial judge took the motion under advisement and eventually determined that a panel of 150 potential
jurors would be empaneled; if one-third of the panel stated they were familiar with the case, had
formed an opinion and could not be fair, he would reconsider the motion to change venue.


 At voir
dire, only thirty-nine members of the 150 member panel had heard of the case, and of those, only
eleven had formed an opinion. 
Relevant Law/Standard of Review
            Article 31.03 of the Code of Criminal Procedure provides:
A change of venue may be granted in any felony or misdemeanor case punishable by
confinement on the written motion of the defendant, supported by his own affidavit
and the affidavit of at least two credible persons, residents of the county where the
prosecution is instituted, for either of the following causes, the truth and sufficiency
of which the court shall determine:
 
1. That there exists in the county where the prosecution is commenced so great a
prejudice against him that he cannot obtain a fair and impartial trial; and
 
2. That there is a dangerous combination against him instigated by influential
persons, by reason of which he cannot expect a fair trial. [Emphasis added.]

Tex.Code Crim.Proc.Ann. art. 31.03(a)(Vernon 1989). When a defendant files a sufficient motion
for change of venue and the State fails to file controverting affidavits, a defendant is entitled to a
change of venue as a matter of law. Cooks v. State, 844 S.W.2d 697, 730 (Tex.Crim.App. 1992). 
However, when a defendant, as in this case, participates in a hearing on the merits of a venue motion
and allows the State to put on evidence, the issue becomes one of fact for determination by the trial
court. Id. The standard of review is whether the trial court abused its discretion in refusing to grant
the motion for change of venue. Ransom v. State, 789 S.W.2d 572, 579 (Tex.Crim.App. 1989). 
Absent a showing by the defendant that there exists such prejudice in the community that the
likelihood of obtaining a fair trial by an impartial jury is doubtful, we will not disturb the trial court’s
decision to deny the motion to change venue. Id.
            Assuming Appellant’s motion was proper, Appellant was not entitled to a change of venue
as a matter of law because he participated in the hearing on his motion. Cooks, 844 S.W.2d at 730. 
The State additionally argues that Appellant’s motion was defective because it was not supported
by his own affidavit, and therefore, the trial court did not abuse its discretion by denying the motion. 
It is well established that if the defendant’s motion is defective, the trial court does not abuse its
discretion by denying the motion without a hearing. Lundstrom v. State, 742 S.W.2d 279, 281 (Tex.
1986). Although the trial court went forward with a hearing and took no further action on the motion
following voir dire, we conclude the court did not abuse its discretion by denying the defective
motion for change of venue. See LaFleur v. State, 79 S.W.3d 129, 132 (Tex.App.--Texarkana 2002,
no pet.); Cover v. State, 913 S.W.2d 611, 616 (Tex.App.--Tyler 1995, pet. ref’d). Point of Error Two
is overruled.
JUDGE’S COMMENTS
            In Point of Error Three, Appellant contends that the trial court made an improper negative
comment on Appellant’s Fifth Amendment right to remain silent. During voir dire, the trial judge
discussed with the jury a defendant’s right not to testify in some detail. The trial judge explained
this right as it exists in the legal system, contrasting it in humorous fashion with how he expects his
children to answer all of his questions and does not permit them to “take the Fifth.” The judge went
on to explain that there are many reasons why a person might not testify, none of which has anything
to do with guilt, and he would instruct the jurors that they could not consider Appellant’s failure to
testify for any reason. The court then determined whether any venire members could not follow the
instructions. 
            On appeal, Appellant argues that the court’s comment that the Fifth Amendment did not
apply outside of the legal system, such as in his dealings with his children, was a negative and
improper comment on this constitutional right. However, Appellant did not object to the court’s
comments. A comment on an accused’s failure to testify violates the accused’s federal and state
constitutional privileges against self-incrimination and the right to not be compelled to testify. See
Bustamante v. State, 48 S.W.3d 761, 764 (Tex.Crim.App. 2001). Ordinarily, a defendant must
object to such comments in order to preserve error. See Martinez v. State, 833 S.W.2d 188, 191
(Tex.App.--Dallas 1992, pet. ref’d); Tex.R.App.P. 33.1(a)(1). The objection requirement generally
applies to complaints about a trial judge’s comments made during trial. Sharpe v. State, 648 S.W.2d
705, 706 (Tex.Crim.App.1983). But the requirement may be subject to an exception. In Blue v.
State, 41 S.W.3d 129 (Tex. 2000), the trial judge apologized to the venire for its long wait, stated
the delay was because the defendant was indecisive on whether to accept a plea bargain, and
expressed his preference that the defendant plead guilty. Id. at 130. A plurality of the Court of
Criminal Appeals acknowledged the objection requirement but held that the trial judge’s comments
“which tainted [the defendant’s] presumption of innocence in front of the venire, were fundamental
error of constitutional dimension and required no objection.” Blue, 41 S.W.3d at 132. As the Court
of Criminal Appeals has recognized, a plurality opinion is not binding precedent. See Jasper v.
State, 61 S.W.3d 413, 421 (Tex.Crim.App. 2001)(acknowledging Blue as a plurality opinion that the
court was not bound to follow); Rabago v. State, 75 S.W.3d 561, 562 (Tex.App.--San Antonio 2002,
pet. ref’d)(same). Even if we were bound to follow Blue, the comments at issue here do not rise to
the level of the comments made in that case. The trial judge’s comments regarding his refusal to
allow his children to “take the Fifth,” especially when considered in context of the judge’s strong
admonishments regarding the constitutional right against compelled self-incrimination, did not
diminish the significance of Appellant’s constitutional right. Point of Error Three is overruled.
EXCLUSION OF EVIDENCE
            In his final point of error, Appellant argues that the court abused its discretion by refusing
to allow him to elicit evidence of the co-defendant’s criminal history and Appellant’s fear of Barela. 
In his first written statement, Appellant said that he “had tried to report what happened but [he was]
scared of the guy that did the shootings.” He also included in the statement that Barela was from
California and had told Appellant that he was “running from the law.” In his second statement,
Appellant explained that he kept some information from Detective Chavaria because he was scared. 
During cross-examination of Detective Chavaria, Appellant’s attorney made the court aware that he
wanted to ask him whether he was aware that Barela was wanted in Arizona for two attempted
murders. Defense counsel offered the evidence to corroborate the statements in the confessions
regarding Appellant’s fear of Barela. The court sustained the State’s relevance objection. Counsel
was permitted to elicit from Chavaria that Appellant had told him he was scared of Barela. Defense
counsel made a bill of exceptions to establish that Chavaria had confirmed that Barela was wanted
in Arizona for two attempted murders and escape at the time of the Scenic Drive offenses. Counsel
re-urged admission of this evidence and argued that it was admissible to explain why Appellant may
have been scared of Barela and to rebut any argument by the State that Barela may have been running
from the law due to outstanding “traffic tickets.”


 
            On appeal, Appellant argues that the evidence of Barela’s criminal record is proper
impeachment evidence and may have also served as mitigating evidence showing that he had a lesser
role in the crimes. Since he did not present these theories of admissibility in the trial court, the
arguments are not preserved for appellate review. See Johnson v. State, 963 S.W.2d 140, 142
(Tex.App.--Texarkana 1998, pet. ref’d)(holding that party offering evidence has burden to establish
admissibility and where theory of admissibility is not presented to trial court, argument is not
preserved for appellate review). Point of Error Four is overruled. Having overruled each of
Appellant’s points of error, we affirm the judgment of the trial court.

August 18, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)