Criminal Case Template



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



MALCOLM DAVALLGHN WILLIAMS,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-05-00373-CR


Appeal from the


265th District Court


of Dallas County, Texas


(TC# F-0451709-HR)


O P I N I O N



 This is an appeal from a jury conviction for the offense of possession with intent to deliver
a controlled substance, to wit, cocaine, in an amount of four grams, but less than two hundred grams,
enhanced by the allegation of a prior felony conviction. The jury assessed punishment at thirty-two
years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. We
affirm.

I. SUMMARY OF THE EVIDENCE


 Officer Paul Lapiano testified that he worked in the narcotics division of the Dallas Police
Department. On May 5, 2004, he and ten to fifteen other officers executed a search warrant at 1010
Caldwell Street in Dallas County, Texas. (1) The officers arrived in a van, and each was positioned in
line in the van, according to his assignment to perform during the execution of the search warrant. 
Officer Lapiano described the execution of a search warrant as a dangerous type of situation, due to
the possible presence of a number of people and guns. He was the fifth person to exit the van, and
he was assigned to cover the right side of the residence. He observed two people, one of whom was
Appellant, on the porch of the residence. He saw that both individuals had been detained. Officer
Lapiano was in charge of collecting the evidence and he was given an Altoids container. There were
several baggies of crack cocaine in the container. Officer Lapiano placed that evidence in the police
evidence locker.

 Dallas Police Officer David Potts was also assigned to the narcotics division. He was
assigned on the day of the search of the Caldwell residence to be the first person to approach. He
was to secure anyone outside the front of the residence. As he approached, he saw a man and a
woman on the front porch; the male was Appellant. His view of these individuals was unobstructed,
and it was light outside, although dusk was approaching. Officer Potts commanded both of the
individuals to let him see their hands. Officer Potts testified that Appellant appeared nervous, and
he was watching the officer. Appellant discretely reached into his pocket, and he grabbed a tin and
placed it on the ground, at the same time trying to distance himself from the tin. An officer named
Moses then took control of Appellant in order to detain him. Officer Potts identified a tin Altoids
box as the item Appellant put on the ground.

 Officer Larry Moses, Sr. testified that he was assigned to use a battering ram to knock down
the door of the residence. In this instance, however, the door was open, so he did not need to use the
device. He was the third person to approach the house, behind Officers Potts and Joe Morin. Officer
Moses saw Appellant and another individual on the porch. Appellant was being handcuffed by a
police officer. Officer Moses noticed an Altoids can next to Appellant. Officer Moses remained to
keep the can and Appellant in view. When Appellant was arrested, Officer Moses picked up the
Altoids can and gave it to Officer Lapiano. The Altoids can contained numerous rocks of crack
cocaine in plastic baggies.

 Officer Morin testified that he was the second person in line to approach the residence. It
was light outside, and Officer Morin's view of the porch was unobstructed. He saw Appellant on
the porch. Officer Morin was watching the movements of the bodies and hands of the people on the
porch. He saw Appellant slowly place something on the ground as he was lying down. He did not
see what the object was.

 Anne Weaver testified that she was an assistant supervisor for drug analysis at the forensics
laboratory in Dallas County. She stated that the State's drug exhibit contained twenty-seven ziplock
bags. The exhibit contained cocaine in an amount of 4.76 grams, including adulterants and dilutants. 
 The State presented as an expert Dallas Police Narcotics Officer Barry Ragsdale. Ragsdale
stated that, in addition to his work for the Dallas Police Department, he had done work for the
Federal Drug Enforcement Administration. He had been a narcotics officer for ten and one-half
years. He was not involved in the execution of the search warrant.

 Officer Ragsdale identified the State's drug exhibit as individual small packages of rocks of
crack cocaine and empty packaging for the packaging of drugs. He testified that small rocks of
cocaine are typically sold in small individual baggies and the exhibit was indicative of the resale of
crack cocaine. Officer Ragsdale stated that each of the baggies would be worth ten to twenty dollars. 
The value of the entire exhibit would be approximately $476. Officer Ragsdale stated that the
exhibit was not indicative of personal use, given the individual packaging; rather, it was indicative
of an intent to sell the crack cocaine to other individuals, perhaps as they approached the front porch
of what he characterized as a "crack house." Ragsdale stated that a person who was purchasing crack
cocaine for his own use would likely buy a fifty-dollar rock and would not take the time and effort
needed to package it in small individual baggies. Rather, the user would chip a piece from the large
rock, smoke it, and keep doing this until the large rock was finished. The witness testified that an
individual charged with possession of under four grams of cocaine could be charged with possession
of that substance, or he could be charged with possession with intent to deliver the substance,
depending upon the circumstances.

 During the defense portion of the trial, Officer Lapiano was recalled. He stated that the
individuals found either inside or outside the house were detained outside. They were released, if
no charges were to be brought against them.

 Jimmy Palmer stated that he was in a walk-in closet when the police executed the search
warrant. He was a friend of the owner of the house, a woman named Mickey Martinez. She allowed
a large number of people to use the house to party, drink, and socialize. She was seldom at the
residence.

 Officer Moses was recalled, and he stated that, after he put the battering ram down, he stayed
on the porch to watch Appellant. He noticed an Altoids can on the ground next to Appellant. He
retrieved it and saw it contained baggies of a substance he believed to be crack cocaine. He gave the
can to Officer Lapiano.

 George Leon Hubbard testified he was a mechanic who repaired cars near the Caldwell
residence. He was not particularly familiar with the residence. Hubbard testified that Appellant had
brought his car to Hubbard that day to repair. He arrived after dark and missed Appellant. 
Hubbard's brother Elias and Hubbard's girlfriend related what had occurred at the house. (2)

 Tawanta Michelle Williams testified that she was married to Appellant. She related that, on
the day in question, Appellant had called her from jail to tell her that he had gotten arrested after he
had taken her car to get it repaired. She testified that her car needed a fuse and Appellant had taken
it to a friend to get it repaired.

 Carmen Carey stated that, on the evening in question, she had gone to pick up her boyfriend,
Hubbard. She knew the owner of the house and her boyfriend. He was also a mechanic. Carey
testified that both the owner and her boyfriend were drug users. The owner had abandoned the
house, and she allowed people to use the house. Carey related that people used drugs at the house,
but she surmised that they used drugs they already possessed, because she was unaware of any drug
selling at the house.

 Carey testified that she was on the porch near Appellant when the police arrived. She jumped
into some bushes. She had a marijuana "blunt" which she threw into the bushes. Carey stated that
the police could not see from their van what was occurring close to the house behind the bushes. She
related that she had seen Appellant once before when he came for car repair, and he never went
inside the house. She had never seem him using drugs, and he had refused an offer to smoke
marijuana.

II. DISCUSSION


 In Issues Nos. One and Two, Appellant maintains that the evidence is legally and factually
insufficient to support the conviction. Specifically, Appellant maintains that the evidence is
insufficient to connect him to the Altoids tin. Further, Appellant argues that the evidence was
insufficient to demonstrate that he had the intent to deliver the cocaine.

 In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence
in the light most favorable to the judgment to determine whether any rational trier of fact could find
the essential elements of the offense, as alleged in the application paragraph of the charge to the jury,
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Butler v. State, 769 S.W.2d
234, 239 (Tex. Crim. App. 1989); Humason v. State, 728 S.W.2d 363, 366 (Tex. Crim. App. 1987). 
More particularly, sufficiency of the evidence should be measured by the elements of the offense,
as defined by the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234,
239-40 (Tex. Crim. App. 1997). (3)

 Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. 
Stoker v. State, 788 S.W.2d 1, 6 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 951 (1990); Dwyer
v. State, 836 S.W.2d 700, 702 (Tex. App.--El Paso 1992, pet. ref'd). We do not resolve any conflict
in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results
of a criminal jury trial are given great deference. Menchaca v. State, 901 S.W.2d 640, 650-52 (Tex.
App.--El Paso 1995, pet. ref'd); Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991); Leyva v. State, 840 S.W.2d 757, 759
(Tex. App.--El Paso 1992, pet. ref'd); Bennett v. State, 831 S.W.2d 20, 22 (Tex. App.--El Paso 1992,
no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to
the verdict. Adelman, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the
evidence in favor of the verdict. Matson, 819 S.W.2d at 843 (quoting Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988)). The trier of fact, not we as an appellate court, is free to accept
or reject all or any portion of any witness's testimony. Belton v. State, 900 S.W.2d 886, 897 (Tex.
App.--El Paso 1995, pet. ref'd).

 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is
factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow
the verdict to stand or the finding of guilt is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we must consider in
conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder's determination or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. See id. 

 In performing this review, we are to give due deference to the fact finder's determinations. 
See id. at 8-9; Clewis, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the
witnesses and may "believe all, some, or none of the testimony . . . ." Chambers v. State, 805
S.W.2d 459, 461 (Tex. Crim. App. 1991). Consequently, we may find the evidence factually
insufficient only where necessary to prevent a manifest injustice from occurring. See Johnson, 23
S.W.3d at 9, 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

 Regarding the legal sufficiency of the evidence herein, we note that there was direct
testimony that, when Appellant observed the approach of the police, he reached into his pocket and
placed a tin on the ground. He then tried to distance himself from the tin. Officer Moses stated that
he saw the Altoids can next to Appellant. We find that this evidence sufficiently establishes
possession. See Nelms v. State, 834 S.W.2d 110, 114 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref'd).

 Officer Ragsdale's testimony indicated that Appellant possessed an amount of cocaine and
packaging indicative of intent to sell or deliver. Appellant states that the evidence was that he was
at the location to get his car repaired, not to sell drugs, but the jury was entitled to disbelieve this
testimony. In any case, it does not rule out the selling of drugs. Appellant did not testify, and there
is nothing in the record controverting Ragsdale's testimony. We find that this evidence was
sufficient to indicate intent to deliver. See Castillo v. State, 867 S.W.2d 817, 821 (Tex. App.--Dallas
1993), vacated on other grounds, 913 S.W.2d 529 (Tex. Crim. App. 1995).

 Appellant argues that Officer Ragsdale testified that Appellant could have been charged with
possession of cocaine as opposed to possession with intent to deliver (4) and that the witness did not
rule out the possibility that the drugs were for personal use. However, nothing in Ragsdale's
testimony suggested that he believed that the drugs were intended for Appellant's personal use. 
Furthermore, an examination of the exchange at trial regarding what offense could have been
charged generally consisted of hypothetical questions regarding lesser or greater amounts of cocaine,
which did not have any bearing on Appellant's situation. We find that the evidence was legally
sufficient to support the conviction.

 We also find that the evidence was factually sufficient to support the conviction. Appellant
makes the same contentions regarding the factual sufficiency of the evidence as he did in his
assertion that the evidence was legally insufficient. The only evidence contravening the police
testimony was that of Carmen Carey. Her contention that the view of the officers was obstructed,
as against the police testimony that there was a clear view of Appellant's actions, was a matter for
the fact finder to determine. This is also true of Appellant's defensive posture that he was at the
scene merely to get his car repaired and not to sell drugs. Issues Nos. One and Two are overruled.

 In Issues Nos. Three and Four, Appellant maintains that the court erred by denying his
motion to suppress the evidence, because Appellant was illegally detained in contravention of the
Federal and State Constitutions. We review a motion to suppress evidence by both abuse of
discretion and de novo standards. Guzman v. State, 955 S.W.2d 85, 87-91 (Tex. Crim. App. 1997);
Urquhart v. State, 128 S.W.3d 701, 704-05 (Tex. App.--El Paso 2003, pet. ref'd). Purely factual
questions, based upon evaluation of credibility and demeanor of witnesses, require application of the
abuse of discretion standard. Guzman, 955 S.W.2d at 89. Mixed questions of law and fact, which
are not dependent on credibility or demeanor, are reviewed de novo. Id. We review the evidence
in the light most favorable to the trial court's ruling. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000). In a suppression hearing, the trial court is the sole finder of fact. Pace v. State, 986
S.W.2d 740, 744 (Tex. App.--El Paso 1999, pet. ref'd). The trial judge may believe or disbelieve
any of the evidence presented. Id. The totality of circumstances is considered to determine whether
the trial court's findings are supported by the record. In re D.A.R., 73 S.W.3d 505, 509 (Tex. App.--El Paso 2002, no pet.) (citing Brewer v. State, 932 S.W.2d 161, 166 (Tex. App.--El Paso 1996, no
pet.)). The trial court's ruling must be upheld if it is correct under any theory of law applicable to
the case. Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

 Appellant asserts that his detention was invalid, because he did not voluntarily abandon the
Altoids tin. Further, he argues that there is no evidence that the police had a reasonable belief that
he constituted a danger to themselves, thereby making his detention illegal.

 Appellant reasons that there is nothing in the record to indicate that the police had a
reasonable belief that he was armed and presently dangerous or that he presented a threat to them. 
Rather, Appellant contends that he was merely present at the scene, so his temporary detention was
unjustified. However, we note that, when officers have probable cause to search a person or
location, they may temporarily detain those persons who are present. Dixon v. State, 206 S.W.3d
613, 619 n.24 (Tex. Crim. App. 2006). This minimizes the risk to the officers and facilitates the
orderly completion of the search. Id. In this instance, the officers had a search warrant, and they
were entitled to detain Appellant. As this was a valid reason to uphold the search, the court did not
err in denying Appellant's motion to suppress the evidence. Issues Nos. Three and Four are
overruled.

 In Issue No. Five, Appellant asserts that the court erred by failing to instruct the jury under
article 38.23 of the Texas Code of Criminal Procedure, which provides that no evidence obtained
by police authorities in violation of any law of the State of Texas shall be admitted into evidence
against the accused in the trial of a criminal case. Tex. Code Crim. Proc. Ann. art. 38.23(a); see
Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002); Fineron v. State, 201 S.W.3d 361,
367 (Tex. App.--El Paso 2006, no pet.). In any case in which the evidence raises an issue regarding
whether evidence was obtained in violation of the laws of Texas, the jury shall be instructed that, if
it believes that, or if it has a reasonable doubt regarding whether, the evidence was obtained in
violation thereof, then the jury shall disregard any such evidence. Tex. Code Crim. Proc. Ann. art.
38.23(a); see Fineron, 201 S.W.3d at 367-68.

 In the present case, the only factual dispute concerns Carmen Carey's testimony that she did
not think the police could see Appellant from where they parked their van. However, this testimony
did not cause a dispute regarding the testimony of the officers that Appellant was on the front porch
of the residence. As stated above, the police were entitled, pursuant to their execution of the search
warrant, to detain Appellant; therefore, there is no factual dispute indicating that the evidence was
seized in violation of the laws of the State. Issue No. Five is overruled.

 In Issue No. Six, Appellant maintains that the court erred in failing to order the disclosure
of the confidential informant's identity. In an issue raised in Appellant's supplemental brief, he
contends that the court erred in failing to hold an in camera hearing. (5)

 There was a discussion regarding Appellant's request to disclose the identity of the informant
at a pretrial hearing. Defense counsel acknowledged that the person described in the search warrant
as selling drugs at the Caldwell Street location did not match Appellant's description. The search
warrant affidavit indicated that the confidential informant gave the information regarding the
premises on May 4, 2004, concerning an individual's having sold drugs on the premises within the
previous twenty-four hours. This individual was not Appellant. The search warrant was executed
on May 5, 2004.

 A defendant who makes a request under Rule of Evidence 508 has the threshold burden of
demonstrating that the informant's identity must be disclosed. Tex. R. Evid. 508(c)(2); Blake v.
State, 125 S.W.3d 717, 728 (Tex. App.--Houston [1st Dist.] 2003, no pet.). The accused bears the
initial burden of showing that the confidential informant may be able to provide testimony necessary
to a fair determination of guilt or innocence. Bodin v. State, 807 S.W.2d 313, 318 (Tex. Crim. App.
1991). To be "necessary," the informant's testimony must "significantly aid" in the determination
of guilt or innocence. Id.; Olivarez v. State, 171 S.W.3d 283, 292 (Tex. App.--Houston [14th Dist.]
2005, no pet.). However, because the accused may not actually know the nature of the informant's
testimony, all that is required to satisfy this threshold burden is a "plausible showing" of the potential
importance of the testimony. Anderson v. State, 817 S.W.2d 69, 72 (Tex. Crim. App. 1991); Long
v. State, 137 S.W.3d 726, 732 (Tex. App.--Waco 2004, pet. ref'd). Nevertheless, mere conjecture
or speculation is insufficient, and the mere filing of a motion to disclose will not compel disclosure. 
Bodin, 807 S.W.2d at 318; Washington v. State, 902 S.W.2d 649, 656 (Tex. App.--Houston [14th
Dist.] 1995, pet. ref'd).

 If the defendant meets the burden of making the preliminary showing, the trial court is
required to hold an in-camera hearing. See Bodin, 807 S.W.2d at 319. The in-camera hearing
provides the State the opportunity to show facts that rebut the defendant's preliminary showing. Id.

 We review a trial court's denial of a motion to disclose a confidential informant under an
abuse of discretion standard. Taylor v. State, 604 S.W.2d 175, 179 (Tex. Crim. App. 1980). Under
this standard, we affirm the judgment, unless the trial court's decision was so clearly wrong as to lie
outside that zone within which reasonable persons might disagree. See Montgomery v. State, 810
S.W.2d 372, 380 (Tex. Crim. App. 1990). We may not substitute our judgment for that of the trial
court; rather, we must decide whether the trial court's decision was arbitrary or unreasonable. Id. 
We must consider all the circumstances of the case to determine whether the trial court abused its
discretion by not requiring the State to disclose the informer's identity. Portillo v. State, 117 S.W.3d
924, 928 (Tex. App.--Houston [14th Dist.] 2003, no pet.).

 If the informant was present and witnessed the offense, his testimony is necessary to a fair
determination of the issue of guilt or innocence. Anderson v. State, 817 S.W.2d 69, 72 (Tex. Crim.
App. 1991). However, when the informant's information is used only to establish probable cause
for a search warrant, and the informant was neither a participant in the offense for which the
defendant is charged nor present when the search warrant was executed, the identity of the informant
need not be disclosed, because his testimony is not essential to a fair determination of guilt. See
Washington, 902 S.W.2d at 656-57.

 In the present case, Appellant was charged with a separate offense while he was outside the
house. The person described in the search warrant affidavit as being in control of the house did not
match Appellant's description. Furthermore, there was no indication that the confidential informant
was present when Appellant committed the offense in question. Appellant has therefore not
demonstrated that the informant's testimony was necessary to a fair determination of guilt or
innocence, and the court did not err in overruling Appellant's motion to disclose the informant's
identity or in failing to hold an in camera hearing. See Ford v. State, 179 S.W.3d 203, 210 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd). Issue No. Six is overruled.

 In Issues Nos. Seven and Eight, Appellant asserts that the court erred in excluding the
internal affairs files of Officer Moses. Appellant predicates his argument on a violation of the
confrontation clause. However, Appellant did not advance that argument at trial, and he has failed
to preserve this issue on appeal. See Davis v. State, 645 S.W.2d 288, 291 (Tex. Crim. App. 1983);
Johnson v. State, 963 S.W.2d 140 (Tex. App.--Texarkana 1998, pet. ref'd). Issues Nos. Seven and
Eight are overruled.

 In Issue No. Nine, Appellant contends that the court erred in failing to include in its charge
to the jury the lesser-included offense of possession of cocaine. Appellant timely requested an
instruction on the lesser-included offense, but the court denied that request.

 To determine whether Appellant was entitled to a charge on the lesser-included offense, we
apply a traditional two-prong test. See Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994);
Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert. denied, 510 U.S. 919 (1993);
Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); Bartholomew v. State, 882 S.W.2d
53, 54-55 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd); Ramirez v. State, 976 S.W.2d 219,
226-27 (Tex. App.--El Paso 1998, pet. ref'd). First, the elements of the lesser-included offense must
be included within the proof necessary to establish the offense charged. Bignall, 887 S.W.2d at 23;
Ramirez, 976 S.W.2d at 227. Second, some evidence must exist in the record that would permit a
jury rationally to find that, if the defendant is guilty, he is guilty only of the lesser offense. Ramirez,
976 S.W.2d at 227.

 The credibility of the evidence and whether it conflicts with other evidence or is controverted
may not be considered in making the determination of whether the lesser-included offense should
be given. See Gadsden v. State, 915 S.W.2d 620, 622 (Tex. App.--El Paso 1996, no pet.); Barrera
v. State, 914 S.W.2d 211, 212 (Tex. App.--El Paso 1996, pet. ref'd). Regardless of its strength or
weakness, if any evidence raises the issue that the defendant was guilty of only the lesser offense,
then the charge must be given. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992). 
An accused may be found guilty of only a lesser-included offense if there is evidence that
affirmatively rebuts or negates an element of the greater offense or if the evidence is subject to
different interpretations, one of which rebuts or negates the crucial element. See Ramirez, 976
S.W.2d at 227.

 It is not, however, sufficient that the jury merely disbelieves crucial evidence pertaining to
the greater offense. See Skinner v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997), cert. denied,
523 U.S. 1079 (1998). There must be some evidence directly germane to the lesser-included offense
for the jury to consider before an instruction on the lesser-included offense is warranted. See
Ramirez, 976 S.W.2d at 227.

 As noted above, possession of a controlled substance is a lesser-included offense of
possession of a controlled substance with the intent to deliver. Upchurch v. State, 23 S.W.3d 536,
538 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd); see Valencia v. State, 51 S.W.3d 418, 423
(Tex. App.--Houston [1st Dist.] 2001, pet. ref'd). Appellant has therefore satisfied the first prong
of the Bignall test.

 The less-easily satisfied second prong asks whether there is "'anything more than a scintilla
of evidence'" that would permit a rational jury to find that the appellant is guilty, but only of the
lesser offense. Upchurch, 23 S.W.3d at 538 (quoting Jones v. State, 921 S.W.2d 361, 364 (Tex.
App.--Houston [1st Dist.] 1996, pet. ref'd)).

 Appellant points to the testimony of Officer Ragsdale referenced above and set out in full in
footnote six, where the officer stated that the penal code provisions regarding possession and
possession with intent to deliver do not turn on the amount of the drug in a defendant's possession. (6)
 
 In his brief, Appellant highlights in bold face and italic type the portion of Officer Ragsdale's
testimony which we have emphasized in footnote six, and he contends that the quoted phrase
provided the record evidence necessary to mandate the inclusion of the lesser-included offense in
the court's charge to the jury. Appellant states in his second supplemental brief that the above-quoted exchange indicates that "Officer Barry Ragsdale testified that possession of over four grams
of a controlled substance does not establish possession with intent to distribute, and that the amount
of drugs found in the Altoid's [sic] tin could have been purchased for personal use."

 A close examination of the quoted exchange between Officer Ragsdale and Appellant's trial
counsel indicates that Appellant's interpretation of the exchange is not warranted. Ragsdale agreed
with Appellant's trial counsel, as a hypothetical proposition, that possession of more than four grams
of cocaine does not "necessarily" mean that the possession was with intent to deliver. However, the
record herein contains evidence that the circumstances surrounding Appellant's possession of the
Altoids tin (such as the fact that the 4.76 grams were individually packaged into twenty-seven
ziplock bags, a fact indicative of resale, and placed in a tin containing additional, empty ziplock
bags) warranted a finding of intent to deliver, while the record contains not even a scintilla of
evidence, specific to this case, from which a rational jury could have concluded that Appellant's
possession of the contents of the tin on May 5, 2004 was solely for his personal use. Accordingly,
we find that the court did not err in failing to instruct the jury on the lesser-included offense. We
overrule Issue No. Nine.

 Having overruled Appellant's Issues Nos. One through Nine, we affirm the judgment of the
trial court.

 KENNETH R. CARR, Justice

May 10, 2007


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)

1. Officer Lapiano testified that the address on the search warrant was 1010 Caldwell, which was the address
he intended to search. A picture taken the day of trial indicated that the residence that was searched was 1014 Caldwell. 
Officer Lapiano testified that the addresses of houses where drugs are sold are often changed by drug dealers. He
hypothesized that the address had been changed, as the number "4" was different from the "101" part of the address.
2. Elias Hubbard had testified earlier that he was in the back of the house when the police arrived. He testified
that his brother George worked on cars across the street from the house.
3. The application paragraph in the court's charge to the jury read, in pertinent part:


 Now, considering all the law and the evidence before you, if you find from the evidence
beyond a reasonable doubt that in Dallas County, Texas, on or about the 5th day of May, 2004, the
defendant did unlawfully knowingly possess with intent to deliver a controlled substance, to-wit:
cocaine, in an amount by aggregate weight, including any adulterants or dilutants, of 4 grams or more
but less than 200 grams, then you will find the defendant guilty of possession with intent to deliver a
controlled substance as charged in the indictment.


 Unless you so find from the evidence beyond a reasonable doubt, you will acquit the
defendant and say by your verdict "Not Guilty."
4. Since possession of a controlled substance is a lesser-included offense of possession with intent to deliver it,
Upchurch v. State, 23 S.W.3d 536, 538 (Tex. App.--Houston [1st Dist.] 2000, pet. ref'd), it is undoubtedly true that the
State could have charged Appellant merely with possession. However, the State did charge him with possession with
intent to deliver.
5. Appellant made a motion to disclose the identity of the confidential informant utilized in the affidavit to the
search warrant. The court stated that an in camera hearing would be held with Officer Lapiano to determine whether
to order the disclosure of the confidential informant's identity. There is no transcript of such a hearing in the appellate
record. The court reporter advised this Court that no such hearing was held.
6. During Officer Ragsdale's testimony, the following exchange occurred:

 

 DEFENSE: Any amount of cocaine in whatever form under 3.99 grams is just--is considered
under the law to be a personal use amount; is that correct?


 RAGSDALE: No, not necessarily.


 DEFENSE: Okay. Under the law then, anything over 4 grams is--anybody in possession of an
amount over 4 grams is considered more than a personal use amount. 


 STATE: Judge, I'm just going to go ahead and object to that question as a misstatement of
the law. 


 COURT: Well, re-ask the question. I'm not sure what you're asking Mr. Ragsdale . . . . Are
you asking him for an opinion on the law or his personal opinion as an expert or
what? I'm not sure I understand the question to rule on it properly.


 DEFENSE: Isn't a third degree felony amount of any form of co--any form of controlled
substance, particularly cocaine, that's under 4 grams, that's a third degree felony
amount; isn't that's [sic] correct?


 RAGSDALE: One to 4 on possession.


 DEFENSE: Right. So somebody in possession of 3.99 grams would be likely to be charged
with a third degree felony; is that correct?


 RAGSDALE: No, not necessarily.


 DEFENSE: What would they--if they were--if they were found in possession of it, what would
they be charged with?


 RAGSDALE: Well, there's--again, there's two--the laws are possession, which violates the Health
& Safety Code 481.115, and there's possession with intent, violation of the Health
& Safety Code 481.112. Doesn't necessarily mean under 4 grams is a possession
case or that over 4 grams is a delivery case--or a possession with intent.


 DEFENSE: But over 4 grams is presumed to be a delivery cases [sic].

 

 RAGSDALE: I disagree with that statement.