Nicholas Raymond JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–97–00169–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 5, 1998.

Decided Feb. 6, 1998.

Scott Brown, Fort Worth, for appellant.

Edward L. Wilkinson, Fort Worth, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Nicholas Johnson appeals from his conviction in a jury trial for the offense of aggravated assault. He pled true to the enhancement allegations of the indictment, and the jury assessed punishment at life imprisonment.

Johnson contends that the trial court committed reversible error by refusing to permit him to present evidence that would have aided in his defense and by admitting evidence that he had committed extraneous offenses. We find no error and affirm the judgment.

The testimony established that Johnson was Judy Bear's boyfriend, that Sherry Ray is Bear's daughter, and that Ray is the common-law wife of the victim, Patrick Greene. On the day before the evening in question, Bear had kept Ray's young child (Bear's grandchild) while Ray was at work. At some point in the day, she and Johnson took the child to a lake house. Late in the evening, they returned to the house where Johnson, Bear, Ray, and the child lived and where Greene was asleep in one of the bedrooms. There is testimony that Johnson and Bear were intoxicated. An argument ensued concerning some workout weights that Greene had given away and that Johnson apparently wanted. Ray told Johnson they would discuss it in the morning and walked away. Johnson followed her into the bedroom, waking Greene and demanding that they go get the weights immediately. Johnson had a machete in his hand. Ray left the house, saying that she was going to call the police.

Ray went to her car, realized she had no keys, and turned to find Johnson facing her, swinging the machete. As she backed away, Greene ran out of the house toward Johnson. When he was close enough, Johnson hit him with the machete, cutting him on his neck. Greene grappled with Johnson, knocking him into a wall. While being held against the wall by Greene, Johnson managed to cut Greene's shoulder with the machete. The two then fell to the ground. Greene released Johnson, who then stood, stabbed Greene in the back, and stated that the next time he

would kill him. Johnson and Bear then fled in a car.

The evidence showed that Greene suffered serious bodily injuries and that the machete used by Johnson in causing those injuries was, in the manner of its use or intended use, a deadly weapon.

Johnson first contends that the court erred by refusing to permit him to introduce evidence about previous violent acts committed by the victim and of which he was aware and about Greene's membership in a violent street gang. He argues that this evidence would have supported his own testimony that Greene was actually the aggressor and that he was attempting to defend himself when he struck Greene with the machete.

His argument on appeal is that the court should have admitted the evidence because a failure to do so constituted a violation of his rights under the Sixth Amendment of the United States Constitution. At trial his response to the State's objection made no reference to a violation of his Sixth Amendment rights.

The evidence was proffered during the testimony of Judy Bear. She had stated before the jury that she had specifically told Johnson about other incidents involving Greene's fighting and that she had told Johnson about a specific altercation between Greene and another person. At that point in the proceedings, the State objected to the admissibility of this evidence because the potential prejudicial nature of the evidence outweighed its probative value. Based upon this objection, the court stated "[a]t this point, I'm going to sustain the State's objection. It may be that it could come in later. But at this point I'm sustaining the objection."

▅ The constitutional argument raised in this appeal was never raised in the trial court or brought to the trial court's attention. Typically, appellate courts will not consider any error that counsel for the accused could have called, but did not call, to the attention of the trial court at a time when such error could have been avoided or corrected by the trial court. TEX.R.APP. P. 33.1; *Ex parte Crispen*, 777 S.W.2d 103, 105 (Tex.Crim.App. 1989). This situation does not, however, in-

volve a failure to object. It involves a potential constitutional claim providing an alternative basis on which the evidence might be admissible, but this theory of admissibility was not presented to the trial judge. As the party offering the evidence, the burden is on the appellant to establish before the trial judge that the evidence should have been admitted. *Davis v. State*, 645 S.W.2d 288, 291 (Tex.Crim.App.1983); *Schuldreich v. State*, 899 S.W.2d 253, 256 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Torres v. State*, 694 S.W.2d 604, 608 (Tex.App.—Corpus Christi 1985, no pet.). We conclude that this argument has not been preserved for review.

▅ Even if preserved, however, the evidence about Johnson's knowledge of Greene's previous violent acts was later introduced before the jury without objection through Johnson's own testimony, after he had raised the issue of self-defense. Johnson testified in detail about the way Greene had beaten one of Judy Bear's previous boyfriends and about several other violent acts that Greene had committed, as well as a previous fight that Johnson had with Greene. Thus, even if the court erred by refusing to admit the testimony of Judy Bear regarding the information she had given Johnson concerning Greene's violent tendencies, the evidence was fully presented to the jury by Johnson himself.

▅ Further, in raising an issue of self-defense, before a victim's general reputation for violence or specific acts of violent misconduct are admissible to show he was the first aggressor or to show the defendant's reasonable belief that he was endangered, the defendant must offer some evidence of aggression by the victim. *Thompson v. State*, 659 S.W.2d 649, 653 (Tex.Crim.App.1983); *Fry v. State*, 915 S.W.2d 554, 560–61 (Tex.App.—Houston [14th Dist.] 1995, no pet.).

▅ In this case, no such testimony was offered before counsel's initial attempt to introduce testimony through Judy Bear about Greene's bad character. Bear testified that she saw Greene running toward Johnson. She could not testify about any confrontation because they were out of her sight,

and she had not testified about any prior physically or verbally aggressive behavior by Greene. The court's statement that Bear's testimony about Greene's prior violence was not admissible **at that time** thus takes on added significance, because if testimony that the victim was acting aggressively came in, her testimony would then become admissible, and as heretofore stated, that evidence was later admitted through the testimony of Johnson himself **after** he testified about Greene's aggressive behavior toward him.

Johnson also suggests that the court's improper refusal to allow Bear to testify about those earlier violent acts effectively forced him to give up his constitutional right to silence. Since we have concluded that the refusal was proper, we need not address this issue. We conclude that at the time the court ruled that Bear's testimony was inadmissible, the ruling was correct, and no error has been shown.

 Johnson further contends that the court erred by refusing to permit either him or Bear to testify that Greene was associated with a gang known as the "Vitos." There is a growing body of case law discussing the admissibility of testimony that a victim or a witness or a defendant was part of a gang. *See generally Trinh v. State,* 930 S.W.2d 214, 218–19 (Tex.App.—Fort Worth 1996, pet. ref'd). In many situations, so long as there is sufficient information provided to permit the court to determine its relevance to the prosecution and to perform the requisite balancing analysis in the proper context, the evidence is admissible. *See Beasley v. State,* 902 S.W.2d 452, 456 (Tex.Crim.App.1995); *Anderson v. State,* 901 S.W.2d 946, 950 (Tex. Crim.App.1995).

Here, however, the trial court was at a disadvantage because of the complete lack of information about the alleged relationship between Greene and the "Vitos." The statement that he should be able to testify about Greene's gang affiliations and Bear's testimony that they were afraid that the Vitos were coming to get them is the only information provided about any alleged gang relationship.

 We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App. 1990). We will not reverse a trial court whose ruling was within the "zone of reasonable disagreement." *Green,* 934 S.W.2d at 102; *Montgomery,* 810 S.W.2d at 391 (opinion on reh'g). In the absence of information that would permit the court to determine whether that relationship existed or the nature of the gang involved, we cannot conclude that the trial court abused its discretion by denying its admittance. This contention is overruled.

 Johnson further contends that the court erred by allowing witness Cheryl Miller to testify about previous bad acts that Johnson had committed. Miller testified as a rebuttal witness that in 1990 or 1991 Johnson had attacked Tony Taliaferro and shoved him through a window. When questioning began on this topic, counsel objected on the grounds of relevance, remoteness, and because the danger of prejudice outweighed its probative value. The court overruled the objection without comment. Johnson later renewed his objection based upon the length of time that had elapsed since the bad acts occurred.

In a similar situation, the Texas Court of Criminal Appeals has held that where a witness is asked a general question about an event followed by more detailed questions about the event, counsel must either object to each question, obtain a running objection, or seek a general ruling outside the presence of the jury so that he will not have to constantly object. *Ethington v. State,* 819 S.W.2d 854, 859 (Tex.Crim.App.1991). Otherwise, a party is required to continue to object each time inadmissible evidence is offered. *Id. at* 858. The context of this testimony consists of descriptions of multiple bad acts committed by Johnson either against the witness or against others that she observed, with substantial detail about the method of the injuries caused by his acts and the preceding violent confrontations that had led up to their occurrence. The nature of the testimony indicates that further objections would have been necessary to complain about Miller's

continued detailing of the bad acts committed by Johnson. Error has not been preserved for review.

Further, even if this contention had been preserved, no error has been shown in the admission of this evidence. When the accused claims self-defense or accident, the State, in order to show the accused's intent, may introduce evidence of other violent acts where the defendant was an aggressor. *Booker v. State*, 929 S.W.2d 57, 63 (Tex. App.—Beaumont 1996, pet. ref'd); *Robinson v. State*, 844 S.W.2d 925, 929 (Tex.App.—Houston [1st Dist.] 1992, no pet.). It has also been held that when an accused raises the issue of self-defense, the State may introduce rebuttal evidence of prior violent acts by the accused in order to show his intent. *Halliburton v. State*, 528 S.W.2d 216, 218–19 (Tex.Crim.App.1975); *Chatham v. State*, 889 S.W.2d 345, 350 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Accordingly, after Johnson had raised the issue of self-defense, it was not error to allow the State to present rebuttal testimony concerning previous violent acts he had committed. This contention of error is overruled.

The judgment is affirmed.