180 S.W.3d 836 (2005)
In the Matter of C.M.G.
No. 06-05-00009-CV.
Court of Appeals of Texas, Texarkana.
Submitted November 22, 2005.
Decided November 30, 2005.
*837 Michael D. Papania, Law Office of Michael D. Papania, Nederland, for appellant.
Wayln G. Thompson, Asst. Crim. Dist. Atty., Beaumont, for appellee.
Before MORRISS, C.J., ROSS and CARTER, JJ.

*838 OPINION
Opinion by Justice ROSS.
C.M.G. appeals from a jury finding that she engaged in delinquent conduct: committing capital murder. Specifically, the jury found that C.M.G. intentionally or knowingly caused the death of a child, younger than six years of age, by suffocation. Based on the jury's finding, the court committed C.M.G. to the Texas Youth Commission for a term of twelve years, "until said child is seventeen years of age and with the possibility of transfer [to the state penitentiary]." C.M.G. contends in this appeal the evidence is legally and factually insufficient to support the verdict.
The evidence shows that C.M.G., at age fifteen, gave birth to a male child fathered by her brother. She was at home, alone in her room, when she delivered the child. She wrapped the newborn in a wet towel and zipped it up inside a band bag.[1] The deceased infant was found inside the bag, and the autopsy report shows that it died of asphyxia, due to smothering. The evidence further shows that C.M.G. has a mental age well below normal and that her intellectual ability is near mental retardation.
Even though appeals of juvenile court orders are generally treated as civil cases, adjudications of delinquency in juvenile cases are statutorily based on the criminal standard of proof. See TEX. FAM. CODE ANN. § 54.03(f) (Vernon Supp.2005). Thus, we review an adjudication by applying the same standards applicable to sufficiency of the evidence challenges in criminal cases. In re K.H., No. 06-04-00103-CV, 169 S.W.3d 459, 2005 WL 1719329 (Tex.App.-Texarkana July 26, 2005, no pet.); In re J.B.M., 157 S.W.3d 823 (Tex. App.-Fort Worth 2005, no pet.).
When both legal and factual sufficiency are challenged, we first determine whether the evidence is legally sufficient to support the verdict. Rivera v. State, 59 S.W.3d 268, 273 (Tex.App.-Texarkana 2001, pet. ref'd). In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000).
In reviewing the factual sufficiency of the evidence, we view the evidence in a neutral light, favoring neither party. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim.App.2004); Johnson, 23 S.W.3d at 7; see Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson, 23 S.W.3d at 9; Clewis, 922 S.W.2d at 129; In re C.S., 79 S.W.3d 619, 622 (Tex.App.-Texarkana 2002, no pet.).
C.M.G. attacks the sufficiency of the evidence by contending it fails to show: (1) that C.M.G. intended to kill, (2) that she knew her conduct was reasonably certain to cause the child's death, (3) that she was aware of but disregarded a substantial and unjustifiable risk that death would result from her conduct, or (4) that she should have been aware of such a risk.
In reviewing the sufficiency of the evidence, we are to look at events occurring before, during, and after the *839 commission of the offense, and we may rely on actions of the defendant that show an understanding and common design to do the prohibited act. Guevara v. State, 152 S.W.3d 45, 49-50 (Tex.Crim.App.2004). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts are sufficient to support the conviction. Motive is a significant circumstance indicating guilt, and intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant. Id. at 50.
There is no doubt C.M.G. wrapped the baby in a wet towel and placed it in the bag. However, there is no direct evidence of intent. The mental culpability of a defendant is of such a nature that it generally must be inferred from the circumstances in which a prohibited act or omission occurs. A mental state is concealed within the mind of an individual and can only be determined from the words, acts, and conduct of that individual. Moore v. State, 969 S.W.2d 4, 10 (Tex. Crim.App.1998). Because there is no direct evidence C.M.G. intended to kill the baby, the question is whether the jury had sufficient evidence before it from which it could infer C.M.G. knowingly caused the baby's death.[2] An act is "knowing" when the person knows his or her conduct is reasonably certain to cause the result. TEX. PEN.CODE ANN. § 6.03(b) (Vernon 2003).
As the trier of fact, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. TEX.CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). The jury could accept portions of a witness' testimony and reject other portions. Bowden v. State, 628 S.W.2d 782, 784 (Tex.Crim.App.1982). Direct evidence of culpability is not necessary to support a conviction; intent or knowledge may be inferred from the acts and circumstances surrounding a crime. Hernandez v. State, 819 S.W.2d 806, 809-10 (Tex.Crim.App.1991).
The evidence for and against the verdict in this case can be summarized as follows:
Evidence Supporting the Verdict
C.M.G. went to the hospital after having the Dr. Tommy Brown, the pathologist who examined
baby because she was bleeding; there she the baby, testified he saw none of
admitted having the child, cutting the umbilical the typical signs of a stillbirth. His review
cord, cleaning the baby with towels, and indicated that the baby's heart was beating
placing the baby in her band bag. She also as it went through the birth canal and that
admitted washing the towels and bed linens. it had breathed in oxygen. He testified the
She left the baby at home, zipped up in the baby could have died from being wrapped in
band bag. a wet towel that occluded the airway. He
 testified that, if the baby was placed in a
C.M.G. successfully hid her pregnancy from band bag that was then sealed off, the baby
family and friends. She took steps to hide would quickly use up the oxygen. He said
the evidence she had given birth, including the baby and wet towel took up about two
hiding the baby, throwing the placenta over thirds of the space in the bag. He also
a fence, washing the bloody items, and leaving testified he saw nothing else in the course of
the house. his examination that could have resulted in
 the baby's death, other than asphyxiation.
C.M.G. told a friend the baby "was breathing Harris further testified C.M.G. expressed
and it stopped." considerable remorse and concern over her
 behavior.
*840
Evidence against the Verdict
C.M.G. claimed at the hospital that the child Harris read to the jury a poem written by
did not move or breathe. C.M.G. He said the poem is suicidal in nature
 and quite introspective.
The baby was bundled up in a towel inside Harris further testified C.M.G. told him she
the zipped band bag. The officer who located was guilt-ridden for not getting help before
the baby saw only a foot sticking out the baby was born.
from the towel. There were no signs of
injury.
The pathologist testified there was no indication
of strangulation or manual asphyxiation.
He also acknowledged that some babies
die for no ascertainable reason.
C.M.G.'s mother testified C.M.G. did poorly
in school and was held back in the fifth
grade. She described her daughter as
"slow." The mother further testified
C.M.G. is easily confused.
Dr. Gerald Harris, a clinical psychologist,
testified C.M.G. has long-term depression,
Attention Deficit Disorder, and Post-traumatic
Stress Disorder (PSD). PSD and
depression make a person very indecisive.
C.M.G. is very immature and has an IQ of
between 77 and 87; mental retardation cutoff
is 75. She is below normal intelligence,
at the edge of the range of mental retardation.
Various scales show her mental/emotional
level to be between eight and eleven
years of age.
The evidence shows that the child was born alive and that C.M.G. put the child in the bag. The sole question in this appeal is whether C.M.G. acted with knowledge her conduct would result in the death of the infant.
Texas does not recognize diminished capacity as an affirmative defense, i.e., a lesser form of the defense of insanity. Jackson v. State, 160 S.W.3d 568, 574-75 (Tex.Crim.App.2005). In contrast, as in Jackson, the diminished-capacity doctrine at issue in this case is simply a failure-of-proof defense in which the defendant claims the State failed to prove C.M.G. had the required state of mind at the time of the offense, based in part on her inherent mental and emotional capabilities, as shown by the evidence, including expert testimony.
Even though C.M.G. is not of average intelligence and is emotionally dysfunctional, the evidence showed she was functional at a middle-school level. Her act of placing the baby in a zipped band bag is consistent with her previous acts of hiding her pregnancy and can easily be described as the culmination of those actions. It is not an unreasonable inference from her actions that she wanted to permanently hide that fact by eliminating the child and that she would know that placing the baby, wrapped in a wet towel, in a small, zipped bag, would result in its suffocation.
We find the evidence is not so weak that the jury's verdict was clearly wrong and *841 unjust; nor is the verdict so against the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, the evidence is legally and factually sufficient.
We affirm the judgment.
NOTES
[1] The record shows that C.M.G. was in the marching band at school. This bag was also described as a small gym bag.
[2] An act is intentional when it is the conscious objective or desire to engage in the conduct or cause the result. TEX. PEN.CODE ANN. § 6.03(a) (Vernon 2003).