NO. 12-07-00306-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


§
 APPEAL FROM THE 

IN THE MATTER OF B.H.,

§
 COUNTY COURT AT LAW #3

A JUVENILE

§
 SMITH COUNTY, TEXAS

 

MEMORANDUM OPINION


 B.H. appeals the juvenile court's order committing him to the Texas Youth Commission
("TYC") for a determinate sentence of seven years. In three issues, B.H. argues that (1) the trial
court improperly admitted evidence of an extraneous offense, (2) the trial court improperly refused
to allow testimony from a witness called by B.H., and (3) the evidence is both legally and factually
insufficient to support the trial court's judgment. We affirm.


Background

 B.H. had a relationship with R.N., a thirteen year old girl, which was the source of strife
among B.H. and his family members. On February 7, 2007, B.H.'s mother, T.H., confronted B.H.
about his relationship with R.N. In response, B.H. allegedly assaulted T.H. The police investigated
the incident, and T.H. provided a videotaped statement to Tyler Police Department Officer Barbie
Stewart. 

 On February 11, 2007, B.H.'s grandmother, A.M., and uncle, D.M., confronted B.H about
his continuing relationship with R.N. This confrontation elevated into an altercation, during which
B.H. stabbed D.M. Thereafter, emergency personnel arrived to assist D.M. while the police sought
to apprehend B.H. B.H. fled the scene with R.N, but was later apprehended. As a result of his
injuries, D.M. required extensive medical treatment and was hospitalized for twenty days. 

 The State filed a petition alleging that B.H. had engaged in delinquent conduct by committing
aggravated assault with a deadly weapon. The case proceeded to trial, but ultimately resulted in a
mistrial. D.M. testified during the initial trial, but refused to testify at the subsequent trial. As a
result, the trial court found D.M. in contempt of court and sentenced him to confinement for one
hundred eighty days and a five hundred dollar fine. During the subsequent trial, the trial court
permitted the parties to read D.M.'s testimony from the first trial. Ultimately, the jury found that
B.H. had engaged in delinquent conduct by committing aggravated assault with a deadly weapon 
and that he should be committed to TYC for a determinate sentence of seven years. The trial court
rendered judgment in accordance with the jury's findings, and this appeal followed. 


Admission of Extraneous Offense Evidence


 In his first issue, B.H. argues that the trial court improperly admitted evidence of an
extraneous offense in violation of Texas Rule of Evidence 404(b). Specifically, B.H. argues that the
trial court should not have permitted the jury to view T.H.'s videotaped statement in which she
recounted the details of B.H.'s alleged assault on her.

Standard of Review and Governing Law

 A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. See
Rodriguez v. State, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); Montgomery v. State, 810
S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (op. on reh'g). The trial court is in the best position
to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude
evidence if it is "within the zone of reasonable disagreement." Rodriguez, 203 S.W.3d at 841. A
determination is beyond the zone of reasonable disagreement if by no reasonable perception of
common experience it could be concluded that the proffered evidence had a tendency to make the
existence of a fact of consequence more or less probable than it would be otherwise. Montgomery,
810 S.W.2d at 391. If the trial court's ruling on the admission of evidence is correct under any
theory of law, its decision should not be disturbed, even where the reasoning underlying the trial
court's ruling is unsound. See Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person
in order to show action in conformity therewith. Tex. R. Evid. 404(b). It may, however, be
admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. See id. Such designated purposes are neither
mutually exclusive nor collectively exhaustive. See Montgomery, 810 S.W.2d at 388. 

 "Relevant evidence" means evidence having any tendency to make the existence of any fact
that is of consequence to the determination of the action more probable or less probable than it would
be without the evidence. Tex. R. Evid. 401. Evidence that is not relevant is inadmissible. Tex. R.
Evid. 402. In Rankin, the court of criminal appeals explained the relevancy inquiry necessary under
Rule 404(b) as follows:


 Under Montgomery, then, it appears that "fact of consequence" includes either an elemental fact or
an evidentiary fact from which an elemental fact can be inferred. An evidentiary fact that stands
wholly unconnected to an elemental fact, however, is not a fact of consequence. A court that
articulates the relevancy of evidence to an evidentiary fact but does not, in any way, draw the inference
to an elemental fact has not completed the necessary relevancy inquiry because it has not shown how
the evidence makes a "fact of consequence" in the case more or less likely.



Rankin, 974 S.W.2d 707, 710 (Tex. Crim. App. 1996).

 Extraneous offense evidence that is relevant to motive is always admissible to prove that a
defendant committed the offense alleged. Crane v. State, 786 S.W.2d 338, 349-50 (Tex. Crim. App.
1990). Moreover, when a defendant raises the issue of self-defense, evidence that the defendant
committed extraneous offenses may be admitted to prove an absence of mistake, an accident, or that
the defendant possessed the requisite state of mind for the offense. See Rogers v. State, 105 S.W.3d
630, 633 n.4 (Tex. Crim. App. 2003). Under such circumstances, the State may introduce evidence
of other violent acts where the defendant was an aggressor as evidence relevant to his intent. 
Johnson v. State, 963 S.W.2d 140, 144 (Tex. App.-Texarkana 1998, pet. ref'd).

Application

 In the trial of the case at hand, B.H. raised the issue of self-defense. A.M. testified that in
B.H.'s altercation with D.M., D.M. was the aggressor and B.H. tried to resist retaliating. As a result
of A.M.'s testimony, B.H.'s alleged assault of T.H. was relevant rebuttal evidence to prove that B.H.
acted with the requisite intent. See id. Furthermore, because B.H.'s assault of T.H. was precipitated
by her dislike of R.N., it was relevant evidence of motive. See Crane, 786 S.W.2d at 349-50. 
Therefore, we hold that the trial court did not err in admitting T.H.'s videotaped statement. B.H.'s
first issue is overruled.


Exclusion of Witness


 In his second issue, B.H. argues that the trial court improperly refused to allow D.M. to
testify in the subsequent trial. According to B.H., although D.M. initially asserted his Fifth
Amendment right against self-incrimination and was found in contempt by the trial court due to his
refusal to testify when called by the State, he still could have chosen to testify when called by B.H. 

 A criminal defendant has a Sixth Amendment right to call witnesses to testify on his behalf.
See Chambers v. Mississippi, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). 
This right applies to respondents in juvenile proceedings. See Tex. Fam. Code Ann. § 54.03(d)
(Vernon 2008). But the right is not absolute. See Keller v. State, 662 S.W.2d 362, 365 (Tex. Crim.
App. 1984). Instead, it must be applied subject to "established rules of procedure and evidence
designed to assure both fairness and reliability in the ascertainment of guilt and innocence." Id. For
instance, a respondent has no right to call a witness for the purpose of having the witness invoke the
Fifth Amendment in front of the jury. See id. at 364; Mendoza v. State, 552 S.W.2d 444, 450 (Tex.
Crim. App. 1977). Further, a respondent has no right to call a witness who answers questions
propounded by the respondent, but who refuses to answer questions propounded by the state. See
Keller, 662 S.W.2d at 364. Complete adversarial examination is required for the accurate
determination of guilt or innocence and the prevention of fraud upon the court. Id. Thus, if the
witness's invocation of his Fifth Amendment right not to testify interferes with the state's ability to
effectively cross examine him, the trial court may disallow the entirety of the witness's testimony. 
Id. at 365.

 In the case at hand, D.M. asserted his Fifth Amendment right against self-incrimination
before he was called to testify by the State in the subsequent trial. Believing D.M. could testify
without violating his Fifth Amendment right, the trial court ordered D.M. to testify. When D.M.
remained steadfast in his refusal to testify, the trial court found D.M. in contempt of court and
allowed the State and B.H. to read from D.M.'s testimony from the first trial. During the
presentation of his case, B.H. called D.M. as a witness. Noting that it had not been made aware that
D.M. had changed his position regarding his refusal to testify, the trial court refused to have D.M.
brought to the witness stand. Based on our reading of Keller, we cannot conclude that the trial court
had a duty to permit D.M.'s testimony after he refused to testify. While B.H. contends that D.M.
may have agreed to testify if he were called by B.H., there is no support in the record for his
contention. Further, the record does not indicate that, had D.M. testified, he would have answered
the State's questions on cross examination. As such, we hold that the trial court did not err in its
refusal to allow D.M. to testify. B.H.'s second issue is overruled.


Sufficiency of the Evidence

 In his third issue, B.H. argues that the evidence was neither legally nor factually sufficient
to support the trial court's judgment. Specifically, B.H. contends that he acted in self-defense in
response to D.M.'s unprovoked attack in order to prevent serious injury to himself.

Standard of Review

 Even though appeals of juvenile cases are generally treated as civil matters, adjudications of
delinquency are based on the criminal standard of proof, and we review the sufficiency of the
evidence as we would in a criminal case. See Tex. Fam. Code Ann. § 54.03(f) (Vernon 2008); In
re C.M.G., 180 S.W.3d 836, 838 (Tex. App.-Texarkana 2005, pet. denied); In re D.J., No.
12-04-00131-CV, 2005 WL 2404103, at *2 n.1 (Tex. App.-Tyler Sept. 30, 2005, no pet.) (mem. op.,
not designated for publication). In criminal cases, the due process guarantee of the Fourteenth
Amendment requires that a conviction be supported by legally sufficient evidence. See Jackson v.
Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); Ross v. State,
133 S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v. State, 192 S.W.3d 585, 592 (Tex.
App.-Tyler 2006, pet. ref'd). When a defendant raises self-defense as a defense or justification, the
evidence is not legally sufficient to support a finding thereon when, viewing the evidence in a light
most favorable to the verdict, no rational trier of fact could have found beyond a reasonable doubt
that the defendant failed to prove the elements of self-defense. See Saxton v. State, 804 S.W.2d 910,
914 (Tex. Crim. App. 1991); see also Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Johnson v. State,
871 S.W.2d 183, 186 (Tex. Crim. App. 1993). 

 While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court
of Criminal Appeals has determined that the Texas Constitution permits further review of the
evidence for factual sufficiency. See Clewis v. State, 922 S.W.2d 126, 129-30 (Tex. Crim. App.
1996). When an issue of factual sufficiency of the evidence is raised concerning the fact finder's
rejection of a defense or justification of self-defense, we review the entirety of the evidence and
determine whether the evidence supporting the verdict is so obviously weak as to undermine our
confidence in the jury's determination, or the proof of guilt and implied finding against the defense,
although adequate if taken alone, is greatly outweighed by contrary proof. See Zuliani v. State, 97
S.W.3d 589, 595 (Tex. Crim. App. 2003); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000); see also Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (Evidence is factually
insufficient only when reviewing court objectively concludes that the great weight and
preponderance of the evidence contradicts the jury's verdict.). Under either standard, our role is
limited to appellate review, and the fact finder is the sole judge of the weight and credibility of a
witness's testimony. Wesbrook v. State, 29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000). The fact
finder may choose to believe all, some, or none of a witness's testimony. Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986).

 The sufficiency of the evidence is measured against the offense as defined by a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a
charge would include one that "accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant is tried." Id.. The
use of the hypothetically correct jury charge applies to review for both legal and factual sufficiency. 
See Wooley v. State, 273 S.W.3d 260, 261 (Tex. Crim. App. 2008).

In the instant case, the State was required to prove that B.H. intentionally, knowingly, or
recklessly caused serious bodily injury to D.M. or that he used or exhibited a deadly weapon during
the commission of the assault against D.M.. See Tex. Penal Code Ann. § 22.02 (Vernon Supp.
2008). For B.H.'s use of force against D.M. to be justified, the record must reflect that B.H.
reasonably believed such force was immediately necessary to protect himself against D.M.'s use or
attempted use of unlawful force. See Tex. Penal Code Ann. § 9.31 (Vernon Supp. 2008).

Analysis

 James Ezell, the emergency medical technician who treated D.M., testified concerning a
conversation that he had with D.M. upon his arrival at the scene. According to Ezell, during their
conversation, D.M. claimed that (1) B.H. and A.M. were arguing because of B.H.'s relationship with
R.N., (2) B.H. became upset with A.M. and was going to attack her, (3) D.M. protected A.M. from
B.H., and (4) B.H. stabbed D.M.. B.H.'s grandfather, David Mays, (1) testified that B.H. said he
stabbed D.M., but that he believed B.H. acted in self-defense. D.M. testified concerning the
altercation as follows: "When I grabbed him, I think he stabbed me. When he stabbed me, I may
have hit him and threw him to the ground." Thus, according to this instance of D.M.'s testimony
concerning the incident, B.H. stabbed D.M. after D.M. merely grabbed B.H., as opposed to after
D.M. hit him. Moreover, the record reflects that once the police arrived, B.H. fled the scene. The
record indicates further that D.M. was severely injured as a result of the stabbing and that the knife
B.H. used was a deadly weapon. Finally, other than a small cut on his finger, there was no evidence
of record that B.H. suffered any injuries.

 Examining the aforementioned evidence in the light most favorable to the jury's verdict, we
conclude that the jury could have determined beyond a reasonable doubt that B.H. committed the
offense of aggravated assault and, further, could have determined beyond a reasonable doubt that
B.H. did not act in self-defense. Thus, we hold that the evidence was legally sufficient to support
the trial court's judgment.

 Shifting our analysis to the factual sufficiency of the evidence, we note that B.H. presented
some evidence contrary to the jury's verdict. A.M. testified that D.M. committed an unprovoked
attack on B.H. and that B.H. simply defended himself. Mays also testified that B.H. did not provoke
D.M.. D.M. testified that he had been drinking and had taken a prescription medication before the
incident. Furthermore, D.M.'s testimony, while inconsistent in several instances, nonetheless
supported that he was upset with B.H., rather than that B.H. was upset with D.M.. Moreover, D.M.
testified in some instances that he hit B.H. before he was stabbed.

 Our review of the entirety of the record, with consideration given to all of the evidence, both
for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that
the proof of guilt or the proof supporting the implied finding against B.H.'s claim of self-defense is
so obviously weak or is otherwise so greatly outweighed by contrary proof so as to render the jury's
verdict clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually
sufficient to support the trial court's judgment. B.H.'s third issue is overruled.


Disposition

 Having overruled B.H.'s three issues, we affirm the trial court's judgment.



 BRIAN HOYLE 

 Justice



Opinion delivered March 18, 2009.

Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.



















(PUBLISH)
1. Pursuant to Texas Rule of Appellate Procedure 9.8, we must, in our opinion, use an alias, i.e. a person's
initials or a fictitious name, to refer to a minor, the minor's parent, or other family member. See Tex. R. App.
P. 9.8(a), (c)(2). B.H.'s grandfather's initials match those of another family member referenced in the opinion. In
the interest of avoiding confusion, we have adopted "David Mays" as a pseudonym for B.H.'s grandfather.