# NO. 12-07-00306-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF B.H.,* | § | *APPEAL FROM THE* |
| | § | *COUNTY COURT AT LAW #3* |
| *A JUVENILE* | § | *SMITH COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

B.H. appeals the juvenile court's order committing him to the Texas Youth Commission ("TYC") for a determinate sentence of seven years. In three issues, B.H. argues that (1) the trial court improperly admitted evidence of an extraneous offense, (2) the trial court improperly refused to allow testimony from a witness called by B.H., and (3) the evidence is both legally and factually insufficient to support the trial court's judgment. We affirm.

### BACKGROUND

B.H. had a relationship with R.N., a thirteen year old girl, which was the source of strife among B.H. and his family members. On February 7, 2007, B.H.'s mother, T.H., confronted B.H. about his relationship with R.N. In response, B.H. allegedly assaulted T.H. The police investigated the incident, and T.H. provided a videotaped statement to Tyler Police Department Officer Barbie Stewart.

On February 11, 2007, B.H.'s grandmother, A.M., and uncle, D.M., confronted B.H about his continuing relationship with R.N. This confrontation elevated into an altercation, during which B.H. stabbed D.M. Thereafter, emergency personnel arrived to assist D.M. while the police sought

to apprehend B.H. B.H. fled the scene with R.N, but was later apprehended. As a result of his injuries, D.M. required extensive medical treatment and was hospitalized for twenty days.

The State filed a petition alleging that B.H. had engaged in delinquent conduct by committing aggravated assault with a deadly weapon. The case proceeded to trial, but ultimately resulted in a mistrial. D.M. testified during the initial trial, but refused to testify at the subsequent trial. As a result, the trial court found D.M. in contempt of court and sentenced him to confinement for one hundred eighty days and a five hundred dollar fine. During the subsequent trial, the trial court permitted the parties to read D.M.'s testimony from the first trial. Ultimately, the jury found that B.H. had engaged in delinquent conduct by committing aggravated assault with a deadly weapon and that he should be committed to TYC for a determinate sentence of seven years. The trial court rendered judgment in accordance with the jury's findings, and this appeal followed.

### ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

In his first issue, B.H. argues that the trial court improperly admitted evidence of an extraneous offense in violation of Texas Rule of Evidence 404(b). Specifically, B.H. argues that the trial court should not have permitted the jury to view T.H.'s videotaped statement in which she recounted the details of B.H.'s alleged assault on her.

**Standard of Review and Governing Law**

A trial court's decision to admit or exclude evidence is reviewed for abuse of discretion. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 390–91 (Tex. Crim. App. 1990) (op. on reh'g). The trial court is in the best position to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude evidence if it is "within the zone of reasonable disagreement." *Rodriguez*, 203 S.W.3d at 841. A determination is beyond the zone of reasonable disagreement if by no reasonable perception of common experience it could be concluded that the proffered evidence had a tendency to make the existence of a fact of consequence more or less probable than it would be otherwise. *Montgomery*, 810 S.W.2d at 391. If the trial court's ruling on the admission of evidence is correct under any theory of law, its decision should not be disturbed, even where the reasoning underlying the trial court's ruling is unsound. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

2

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.* Such designated purposes are neither mutually exclusive nor collectively exhaustive. *See Montgomery*, 810 S.W.2d at 388.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. TEX. R. EVID. 402. In *Rankin*, the court of criminal appeals explained the relevancy inquiry necessary under Rule 404(b) as follows:

> Under *Montgomery*, then, it appears that "fact of consequence" includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred. An evidentiary fact that stands wholly unconnected to an elemental fact, however, is not a fact of consequence. A court that articulates the relevancy of evidence to an evidentiary fact but does not, in any way, draw the inference to an elemental fact has not completed the necessary relevancy inquiry because it has not shown how the evidence makes a "fact of consequence" in the case more or less likely.

*Rankin*, 974 S.W.2d 707, 710 (Tex. Crim. App. 1996).

Extraneous offense evidence that is relevant to motive is always admissible to prove that a defendant committed the offense alleged. *Crane v. State*, 786 S.W.2d 338, 349–50 (Tex. Crim. App. 1990). Moreover, when a defendant raises the issue of self-defense, evidence that the defendant committed extraneous offenses may be admitted to prove an absence of mistake, an accident, or that the defendant possessed the requisite state of mind for the offense. *See Rogers v. State*, 105 S.W.3d 630, 633 n.4 (Tex. Crim. App. 2003). Under such circumstances, the State may introduce evidence of other violent acts where the defendant was an aggressor as evidence relevant to his intent. *Johnson v. State*, 963 S.W.2d 140, 144 (Tex. App.–Texarkana 1998, pet. ref'd).

**Application**

In the trial of the case at hand, B.H. raised the issue of self-defense. A.M. testified that in B.H.'s altercation with D.M., D.M. was the aggressor and B.H. tried to resist retaliating. As a result of A.M.'s testimony, B.H.'s alleged assault of T.H. was relevant rebuttal evidence to prove that B.H. acted with the requisite intent. *See id.* Furthermore, because B.H.'s assault of T.H. was precipitated

by her dislike of R.N., it was relevant evidence of motive. *See **Crane***, 786 S.W.2d at 349–50. Therefore, we hold that the trial court did not err in admitting T.H.'s videotaped statement. B.H.'s first issue is overruled.

### EXCLUSION OF WITNESS

In his second issue, B.H. argues that the trial court improperly refused to allow D.M. to testify in the subsequent trial. According to B.H., although D.M. initially asserted his Fifth Amendment right against self-incrimination and was found in contempt by the trial court due to his refusal to testify when called by the State, he still could have chosen to testify when called by B.H.

A criminal defendant has a Sixth Amendment right to call witnesses to testify on his behalf. *See **Chambers v. Mississippi***, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049, 35 L. Ed. 2d 297 (1973). This right applies to respondents in juvenile proceedings. *See* TEX. FAM. CODE ANN. § 54.03(d) (Vernon 2008). But the right is not absolute. *See **Keller v. State***, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984). Instead, it must be applied subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." ***Id.*** For instance, a respondent has no right to call a witness for the purpose of having the witness invoke the Fifth Amendment in front of the jury. *See **id**.* at 364; ***Mendoza v. State***, 552 S.W.2d 444, 450 (Tex. Crim. App. 1977). Further, a respondent has no right to call a witness who answers questions propounded by the respondent, but who refuses to answer questions propounded by the state. *See **Keller***, 662 S.W.2d at 364. Complete adversarial examination is required for the accurate determination of guilt or innocence and the prevention of fraud upon the court. ***Id***. Thus, if the witness's invocation of his Fifth Amendment right not to testify interferes with the state's ability to effectively cross examine him, the trial court may disallow the entirety of the witness's testimony. ***Id.*** at 365.

In the case at hand, D.M. asserted his Fifth Amendment right against self-incrimination before he was called to testify by the State in the subsequent trial. Believing D.M. could testify without violating his Fifth Amendment right, the trial court ordered D.M. to testify. When D.M. remained steadfast in his refusal to testify, the trial court found D.M. in contempt of court and allowed the State and B.H. to read from D.M.'s testimony from the first trial. During the

4

presentation of his case, B.H. called D.M. as a witness. Noting that it had not been made aware that D.M. had changed his position regarding his refusal to testify, the trial court refused to have D.M. brought to the witness stand. Based on our reading of *Keller*, we cannot conclude that the trial court had a duty to permit D.M.'s testimony after he refused to testify. While B.H. contends that D.M. may have agreed to testify if he were called by B.H., there is no support in the record for his contention. Further, the record does not indicate that, had D.M. testified, he would have answered the State's questions on cross examination. As such, we hold that the trial court did not err in its refusal to allow D.M. to testify. B.H.'s second issue is overruled.

SUFFICIENCY OF THE EVIDENCE

In his third issue, B.H. argues that the evidence was neither legally nor factually sufficient to support the trial court's judgment. Specifically, B.H. contends that he acted in self-defense in response to D.M.'s unprovoked attack in order to prevent serious injury to himself.

**Standard of Review**

Even though appeals of juvenile cases are generally treated as civil matters, adjudications of delinquency are based on the criminal standard of proof, and we review the sufficiency of the evidence as we would in a criminal case. *See* TEX. FAM. CODE ANN. § 54.03(f) (Vernon 2008); *In re C.M.G.*, 180 S.W.3d 836, 838 (Tex. App.–Texarkana 2005, pet. denied); *In re D.J.*, No. 12-04-00131-CV, 2005 WL 2404103, at *2 n.1 (Tex. App.–Tyler Sept. 30, 2005, no pet.) (mem. op., not designated for publication). In criminal cases, the due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). When a defendant raises self-defense as a defense or justification, the evidence is not legally sufficient to support a finding thereon when, viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found beyond a reasonable doubt that the defendant failed to prove the elements of self-defense. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).

5

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution permits further review of the evidence for factual sufficiency. *See Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996). When an issue of factual sufficiency of the evidence is raised concerning the fact finder's rejection of a defense or justification of self-defense, we review the entirety of the evidence and determine whether the evidence supporting the verdict is so obviously weak as to undermine our confidence in the jury's determination, or the proof of guilt and implied finding against the defense, although adequate if taken alone, is greatly outweighed by contrary proof. *See Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *see also Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006) (Evidence is factually insufficient only when reviewing court objectively concludes that the great weight and preponderance of the evidence contradicts the jury's verdict.). Under either standard, our role is limited to appellate review, and the fact finder is the sole judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*. The use of the hypothetically correct jury charge applies to review for both legal and factual sufficiency. *See Wooley v. State*, 273 S.W.3d 260, 261 (Tex. Crim. App. 2008).

In the instant case, the State was required to prove that B.H. intentionally, knowingly, or recklessly caused serious bodily injury to D.M. or that he used or exhibited a deadly weapon during the commission of the assault against D.M.. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon Supp. 2008). For B.H.'s use of force against D.M. to be justified, the record must reflect that B.H. reasonably believed such force was immediately necessary to protect himself against D.M.'s use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31 (Vernon Supp. 2008).

6

**Analysis**

James Ezell, the emergency medical technician who treated D.M., testified concerning a conversation that he had with D.M. upon his arrival at the scene. According to Ezell, during their conversation, D.M. claimed that (1) B.H. and A.M. were arguing because of B.H.'s relationship with R.N., (2) B.H. became upset with A.M. and was going to attack her, (3) D.M. protected A.M. from B.H., and (4) B.H. stabbed D.M.. B.H.'s grandfather, David Mays,[1] testified that B.H. said he stabbed D.M., but that he believed B.H. acted in self-defense. D.M. testified concerning the altercation as follows: "When I grabbed him, I think he stabbed me. When he stabbed me, I may have hit him and threw him to the ground." Thus, according to this instance of D.M.'s testimony concerning the incident, B.H. stabbed D.M. after D.M. merely grabbed B.H., as opposed to after D.M. hit him. Moreover, the record reflects that once the police arrived, B.H. fled the scene. The record indicates further that D.M. was severely injured as a result of the stabbing and that the knife B.H. used was a deadly weapon. Finally, other than a small cut on his finger, there was no evidence of record that B.H. suffered any injuries.

Examining the aforementioned evidence in the light most favorable to the jury's verdict, we conclude that the jury could have determined beyond a reasonable doubt that B.H. committed the offense of aggravated assault and, further, could have determined beyond a reasonable doubt that B.H. did not act in self-defense. Thus, we hold that the evidence was legally sufficient to support the trial court's judgment.

Shifting our analysis to the factual sufficiency of the evidence, we note that B.H. presented some evidence contrary to the jury's verdict. A.M. testified that D.M. committed an unprovoked attack on B.H. and that B.H. simply defended himself. Mays also testified that B.H. did not provoke D.M.. D.M. testified that he had been drinking and had taken a prescription medication before the incident. Furthermore, D.M.'s testimony, while inconsistent in several instances, nonetheless supported that he was upset with B.H., rather than that B.H. was upset with D.M.. Moreover, D.M. testified in some instances that he hit B.H. before he was stabbed.

---

[1] Pursuant to Texas Rule of Appellate Procedure 9.8, we must, in our opinion, use an alias, i.e. a person's initials or a fictitious name, to refer to a minor, the minor's parent, or other family member. *See* TEX. R. APP. P. 9.8(a), (c)(2). B.H.'s grandfather's initials match those of another family member referenced in the opinion. In the interest of avoiding confusion, we have adopted "David Mays" as a pseudonym for B.H.'s grandfather.

7

Our review of the entirety of the record, with consideration given to all of the evidence, both for and against the jury's finding, has not revealed to us any evidence that causes us to conclude that the proof of guilt or the proof supporting the implied finding against B.H.'s claim of self-defense is so obviously weak or is otherwise so greatly outweighed by contrary proof so as to render the jury's verdict clearly wrong or manifestly unjust. Therefore, we hold that the evidence is factually sufficient to support the trial court's judgment. B.H.'s third issue is overruled.

#### DISPOSITION

Having overruled B.H.'s three issues, we ***affirm*** the trial court's judgment.


   BRIAN HOYLE   
Justice


Opinion delivered March 18, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)


8