NO. 07-10-0111-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER  29, 2011

_____

IN THE MATTER OF T.N.T., A JUVENILE

_____

FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY;

NO. J-29,580; HONORABLE W. JEANNE MEURER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, T.N.T.,[1] appeals the trial court's order finding that she committed assault—family violence[2] and placing her on intensive probation in the custody of her father for six months subject to certain probationary rules.  In a single issue, T.N.T. asserts the evidence is insufficient to support the trial court's order.  We affirm.

---

[1]T.N.T. was born on December 14, 1993, and at the time an appealable order was entered, she was seventeen years old.  Thus, pursuant to Texas Rule of Appellate Procedure 9.8, we use an alias, i.e., a person's initials or a fictitious name, to refer to a minor, the minor's parent, or other family member.  See Tex. R. App. P. 9.8(a), (c)(2).

[2]See Tex. Penal Code Ann. § 22.01(a)(1) (West 2011).

## Background

In July 2008, the State filed an *Original Petition Alleging Delinquent Conduct* asserting that, on or about July 7, 2008, T.N.T. committed assault—family violence in that she knowingly and intentionally caused bodily injury to E.E., a member of T.N.T.'s family and household by striking and grabbing E.E. with her hand. The trial court held an adjudication hearing in November 2009.

### The Hearing

At the hearing, E.E. testified that, on July 7, 2008, T.N.T. and her mother, L.T., were visiting at her house.[3] T.N.T. and L.T. were arguing because T.N.T. did not want to be there. E.E. and L.T. refused to allow her to leave and T.N.T. began walking toward the front door. As she passed her mother she said, "F—k you." E.E. responded by telling T.N.T. that she "was not going to disrespect her mother," and as T.N.T. passed her, E.E. grabbed T.N.T. by the arm to swing her around so that she would be facing E.E. and L.T. As she did so, T.N.T. took a swing at her with her fist. E.E. could not recall whether she was punched but responded by "taking [T.N.T.] down to the ground." While E.E. held T.N.T. down with a forearm across her chest, T.N.T. was scratching her, grabbing her hair, pulling her hair out and hitting her. At that point, E.E. told T.N.T. to let her go. T.N.T. released E.E. and L.T. separated the two women. E.E. testified she had seven or eight scratches down the side of her face and was bruised on her buttocks, knees and arm. T.N.T. did not have any injuries.

---

[3]E.E. and L.T. were partners. Although E.E., L.T., and T.N.T. had lived together in the same household for a period of time, L.T. and T.N.T. were staying in an apartment due to T.N.T.'s behavioral issues.

L.T. generally corroborated E.E.'s testimony. She also testified that she was at E.E.'s house with T.N.T. and three other children, ages 3, 4, and 8 years old. After the other children were in bed, T.N.T. wanted to leave the house. When L.T. refused to allow her to go, T.N.T. began slamming doors and hitting walls. L.T. told T.N.T. they were going to return to their apartment because T.N.T. was "destroying the room." L.T. further testified that E.E. took T.N.T. by the arm to turn her around and, at the same time, T.N.T. came around with her fist up and "connected somehow with [E.E.]." The next thing L.T. knew was that T.N.T. and E.E. were on the floor. E.E. was holding T.N.T. down with her forearm across T.N.T.'s chest[4] while T.N.T. was screaming and kicking. T.N.T. screamed "let go" and E.E. screamed "let go of my hair." When she was able to separate them, E.E.'s face was bleeding and T.N.T. had a hand full of hair.

Ultimately, T.N.T. called the police to report that she had been attacked. L.T. noticed E.E. had multiple injuries but T.N.T. appeared uninjured. She testified that, when EMS arrived, they checked T.N.T. and found that she had suffered no injuries. E.E., on the other hand, had a bruise underneath her eye, her face was bleeding and she was bruised on her body. Following their testimony, both sides rested.

**Post-Hearing Proceedings**

On December 7, 2009, the trial court issued its *Judgment of Delinquency* wherein the trial court found beyond a reasonable doubt that, on July 7, 2008, T.N.T. had committed an assault—family violence by knowingly and intentionally causing bodily injury to E.E. by grabbing E.E. with her hand.

---

[4]E.E. testified she worked at the Travis County Sheriff's Office and the hold she used to keep T.N.T. down was one she had learned in her training as a peace officer.

On January 26, 2010, the trial court held a disposition hearing and issued its *Dispositional Order of Probation* wherein T.N.T. was placed on six months intensive probation in the custody of her father and was ordered, *inter alia*, to undergo counseling and participate in drug treatment. This appeal followed.

**Discussion**

T.N.T. asserts that the evidence was not sufficient to support the trial court's judgment because she acted in self-defense in response to E.E.'s unprovoked attack in order to prevent serious injury to herself. We disagree.

**Standard of Review**

Even though appeals of juvenile cases are generally treated as civil matters, adjudications of delinquency are based on the criminal standard of proof, and we review the sufficiency of evidence as we would in a criminal case. *See* Tex. Fam. Code Ann. § 54.03(f) (West Supp. 2011); *In re C.M.G.,* 180 S.W.3d 836, 838 (Tex.App.—Texarkana 2005, pet. denied). In criminal cases, the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 33 S.Ct. 2781, 61 L.Ed.2d 560 (1976). *See Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). When a defendant raises self-defense as a defense of justification, the evidence is not legally sufficient to support a finding of guilt when, viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found beyond a reasonable

4

doubt that the defendant failed to prove the elements of self-defense. *See Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App. 1991).

In this case, the trial court acted as the trier of fact and, as such, was the sole judge of the weight of the evidence and credibility of the witnesses. *Margraves v. State,* 34 S.W.3d 912, 919 (Tex.Crim.App. 2000); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). In addition, because the reconciliation of conflicts in the testimony is also within the exclusive province of the fact finder; *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986), we resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

Here, to support the trial court's finding, the State was required to prove T.N.T. intentionally or knowingly caused bodily injury to E.E., a member of T.N.T.'s family and household, by grabbing E.E with her hand. *See* Tex. Penal Code Ann. 22.01 (West 2011). For T.N.T.'s use of force against E.E. to be justified, the record must show that T.N.T. reasonably believed such force was immediately necessary to protect herself against E.E.'s use or attempted use of unlawful force. *See* Tex. Penal Code Ann. § 9.31 (West 2011).

**Analysis**

The evidence at the hearing indicated that T.N.T. was angry because her mother would not give her permission to leave E.E.'s house. When L.T. refused to allow her to leave, T.N.T. began slamming doors and hitting walls. Because of T.N.T.'s behavior, her mother decided it was time to leave. When T.N.T. cursed her mother, E.E. was offended and told T.N.T. not "to disrespect her mother." E.E. then took T.N.T. by the

arm from behind in order to turn her around to face them. As she did so, T.N.T. swung at E.E. with her fist and struck her somewhere on her body. In the ensuing confrontation T.N.T. scratched E.E., grabbed her hair, pulled her hair out, hit and kicked E.E. The record reflects that E.E. suffered injuries while T.N.T. did not.

Examining the aforementioned evidence in the light most favorable to the trial court's judgment, we conclude that the trial court could have determined beyond a reasonable doubt that T.N.T. committed the offense of assault—family violence and, further, could have determined beyond a reasonable doubt that T.N.T.'s actions were not in self-defense. There is no evidence T.N.T. reasonably believed it was immediately necessary to punch E.E. or grab her hair in order to protect herself against any use or attempted use of unlawful force by E.E. The trial court was justified in finding that E.E.'s attempt to stop T.N.T. and confront her about her behavior was not assaultive conduct justifying T.N.T.'s aggressive behavior towards E.E. Thus, we hold the evidence was sufficient to support the trial court's judgment.

Because we find that E.E.'s conduct was not assaultive in the first place, it is unnecessary for us to address T.N.T.'s contention that the trial court erred in finding that E.E.'s assault of T.N.T. was not justified under the theory of parental discipline.

**Conclusion**

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

6